# April, 1920

## Bexar County v. W. C. Linden.

No. 3213. Decided April 14, 1920.

(220 S. W., 761.)

1.—District Attorney—Excess Fees—Payment to County—Constitution.

Article 3889, Revised Statutes, 1911, requiring excess fees of district attorneys to be paid by them into the county treasury is not invalid as being in violation of art. 8, sec. 51, of the Constitution prohibiting any grant of public money to a municipal or other corporation. (P. 343).

2.—Same—Counties—Municipal Corporations.

Counties, though possessing some corporate attributes and termed quasi-corporations, are mer~ political subdivisions of the State, created as agencies for the exercise of essentially State powers, to make effective the civil administration of the Sta⁺e government and execute the general policy of the State, such as the collection of taxes, diffusion of education maintenance of highways, and care of the poor, and especially the administration of the State's justice. In this they are distinguishable from municipal corporations proper, such as cities and towns, which are established largely for the private interests of their inhabitants. City of Galveston v. Posnainsky, 62 Texas, 118; Heigel v. Wichita County, 84 Texas, 392; City of Sherman v. Shobe, 94 Texas, 129. (Pp. 343-347).

3.—Same—Grant of State Funds.

An apportionment to counties of funds belonging to the State, such as excess fees of district attorneys, is not a grant of public money nor in the nature of a gratuity, but merely a method adopted by the State for the employment of such money to discharge the obligations of the State, and to be appropriated by the county to strictly governmental purposes. (P. 347).

4.—Same—Uniformity of Distribution.

The distribution of excess fees of officers to the counties in which they accrue is not to be held invalid for want of uniformity in such distribution, and is apparently as fair a method thereof as could be devised. (Pp. 347, 348).

5.—District Attorney—Fees of Office.

The Act of April 3, 1913, Laws, 33d Leg., p. 246, amending article 3881 and others of the Revised Statutes, 1911, relating to fees of office, did not relieve district attorneys from the operation of the law fixing the maximum of their compensation, which for Bexar County was limited to the amount allowed by amended articles 3882, 3883. Bexar County v. Linden, 205 S W., 478, herein reversed, is approved on this point. (P. 384).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Linden sued Bexar County and recovered judgment. On appeal by the County this was reformed and affirmed, 205 S. W., 478. Thereupon Bexar County obtained writ of error.

*Lewright & Douglas,* for plaintiff in error.—Counties are not embraced in nor contemplated by the language "municipal or other corporations whatsoever" used in art. 3, sec. 1, of the Constitution. Rev. Stats., art. 1365; City of Sherman v. Shobe, 94 Texas, 126; Sherman County v. Simonds, 109 U. S.; 735; 11 Cyc., 342; 15 Corpus Juris, 392; Const., arts. 9, 11, 12; City of Galveston v. Posnainsky, 62 Texas, 118; Heigel v. Wichita County, 84 Texas, 392; San Mateo County v. Coburn, 63 Pac., 78; Commissioners v. Mighels, 7 Ohio St. 110; Hersey v. Neilson, 131 Pac., 30; 33 Ann. Cases, 963; Stappenback v. Multnoman, 142 Pac., 832; Rev. Stats., arts. 1421, 1438, subd. 2.

The provision of Article 3889 requiring the excess fees to be paid to the county treasury does not operate as a grant thereof to the county even though it may be said to have intended that the money should be applied to the use and benefit of the county, because it is not bestowed as a gratuity, but in connection with the administration of the laws, and is a just recognition · of the equities growing out of the expenses incurred by the counties as agencies of the State in the enforcement of law. Weaver v. Scurry County, 28 S. W., 836; Dimmit v. Frazier, 27 S. W., 829; Chambers v. Gilbert, 17 Texas Civ. App., 106; Baldwin v. State, 21 Texas App., 593; 94 Texas, 439; 28 Ann. Cases, 1230; Terrell v. Sparks, 104 Texas, 191; Ex Parte Smith,. 56 Texas Crim., 375; Hammond v. City, 115 N. E., 998; Rochefeller v. Taylor, 74 N. Y. Supp., 818; In Re Greene, 60 N. E., 183; Board v. State, 47 N. E., 288.

Even though it may. be said that the payment of the excess fees to the county treasurer operates as a grant thereof to the county, it cannot be said that it is a grant of public money. People v. Murray, 44 N. E., 146; Tarrant County v. Butler, 35 Texas Civ. App., 421; Clark v. Finley, 93 Texas, 171.

If the provision of article 3889 for the payment of the excess fees to the county treasurer does operate as a grant of public moneys to the county, still that portion of the Act which places a limit on the amount of fees which district attorneys may retain is valid, and this particular provision would be construed (in order to preserve its validity) as a direction for the payment of the excess derived from fees received from the State to the county treasurer as trustee or custodian for the use and benefit of the State. St. Louis v. Griffin, 106 Texas, 483; Ex Parte Mabry, 5 Texas App., 98; State v. McAlister, 88 Texas, 284; Linden v. Finley, 92 Texas, 451; Tarrant County v. Butler, 35 Texas Civ. App., 656.

Even though it be said that article 3889 would be unconstitutional if it could be construed as being a grant of excess fees from the

State to the County, still such construction must be based on implication only (there being no express statement indicating an intention to make a grant to the County) and the court should, where two theories are susceptible, one of which would render the statute invalid, adopt that construction, if it can be reasonably done, which would leave the statute in effect; and it would be entirely consistent to hold by implication, in favor of the validity of the statute, that the excess fees coming from the State treasury into the county treasury are received by the county for the use and benefit of the State. 12 Corpus Juris, 790, note 16; also authorities cited under first proposition above.

The Court of Civil Appeals erred in holding that the statute requiring excess fees of district attorneys to be paid into the county treasury is invalid and unconstitutional, and that such provision is not a recognition, under the law of averages, of the equitable claim of the larger counties upon the State for increased expenses connected with administering the criminal laws of the State, based upon the well recognized fact that such expenses increase to a relatively higher ratio in proportion as the population increases. Board v. State, 47 N. E., 288.

The portion of the Act which fixes an unqualified limit upon the fees which may be retained by district attorneys is valid in any event, and appellee could have no concern as to the excess after it passed from his hands in the manner expressly directed by the statute, even though the statute so directing may be unconstitutional. Young v. City, 174 S. W., 986; Sutherland, Stat. Const., 2d Ed., secs. 305, 308, 297.

Arts. 3881, et seq., necessarily place a limitation upon the amount of fees fixed by arts. 1118, 1119 of the Code of Criminal Procedure, and in that sense said two statutes should be construed together as if they were one Act. 34 Cyc., 1146.

*W. C. Linden* and *Joe H. H. Graham,* for defendant in error.— The framers of the Constitution of 1876 by that instrument itself are shown to have treated counties as municipal corporations within the sense and meaning of section 51 of article 3 of the Constitution of 1876. Const., art. 11, secs. 1, 3, 6, 7.

The Legislature, after the adoption of section 51 of article 3, was prohibited by the Constitution from making any donation for the benefit of the county, the support of its government or citizens thereof, unless so authorized by special provision of the Constitution. Const. art. 11, sec. 8.

Counties are *quasi* involuntary municipal corporations within the purview and meaning of section 51 of article 3 of the Constitution. Bell County v. Alexander, 22 Texas, 351; Milam County v. Bateman, 54 Texas, 153; Yoakum County v. Slaughter, 160 S. W., 1175;

Tarrant County v. Butler, 80 S. W., 656; Clark v. Finley, 54 S. W., 343, and particularly the last paragraph on page 347.

Courts in giving interpretation to the Constitution are bound to follow the intent of the framers of the Constitution and the interpretation placed upon the same by the Constitutional Convention when that intent and that interpretation are manifest, or when it may be determined from other provisions of the Constitution dealing with the same subject and it is manifest from the Constitution itself that its framers treated counties as municipal corporations and placed them in the same class with cities and towns within the purview and meaning of section 51 of article 3. Article 11, sections 1, 3, 6, 7 and 8, of the Constitution of 1876.

The levying and assessing of taxes upon the property of citizens of the entire State in all of the sparsely settled counties, and the payment out of said taxes when so collected of excess fees collected from the State Treasury by District Attorneys out of the public money of the State, and paid over to county treasurers for the benefit of only a few populous counties of the State, is violative of the Constitutional provision of a uniform system of taxation, and is the imposing of a burden upon the tax payers of all of the sparsely settled counties which receive no benefit from the fee bill, which burden is imposed upon the citizens of the sparsely settled counties not for the support of the state government but for the support of the county government of those few counties which come within the beneficial provisions of the fee bill.

The Court of Civil Appeals erred in overruling the contention of the defendant in error, made in the trial court and in the Court of Civil Appeals in substance and to the effect that the amendment of articles 3881, 3882 and 3883, adopted by the Legislature in 1913, eliminated District Attorneys from the provisions of the fee bill limiting officers.

Mr. Chief Justice PHILLIPS delivered the opinion of the court.

The case concerns the constitutionality of the statute (Article 3889 —Section 11, Act of 1897, as amended) requiring District Attorneys to pay into the county treasury what are termed the excess fees of their office.

The suit was one by W. C. Linden to recover an amount of such fees paid by him as District Attorney into the county treasury of Bexar County, and in which, by cross-action, Bexar County sought recovery against him for an amount claimed by it be still due upon such account. Mr. Linden prevailed in the trial court. Upon Bexar County's appeal, the honorable Court of Civil Appeals for the Fourth District held the statute unconstitutional as amounting to a grant of public money to counties of the State as municipal corporations, within the inhibition of Section 51 of Article 3 of the

Constitution. Under this holding the judgment, after being reformed in some particulars, was affirmed.

It was within the Legislature's power, in our opinion, to provide for the disposition of the excess fees of District Attorneys as is done by the statute. We do not regard the disposition made as in any sense a grant of public money. The statute is in our view, therefore, a valid enactment.

This holding is based upon the relation which the counties of the State bear to the sovereignty of the State; upon their character as mere political subdivisions of the State; created for the convenience of the people and for the purposes of local government, but for the exercise of essentially State powers as distinguished from municipal powers; and, with their conferred powers having the nature of duties rather than privileges, existing as but agencies of the state for the effective discharge through local officers of the governmental obligations of the State.

The use of the counties of the State as a means of government is a use by the State and for the State as a sovereignty. The effect of the statute, in association with other provisions of law, is to set apart the excess fees of District Attorneys and other officials as State funds for the governmental purposes of the State with whose execution the counties, as instrumentalities of the State, are charged. Such a dedication is in no true sense a grant of public money. It is but an appropriation of funds of the State for the uses of the State. It is therefore a constitutional use, having no character of a bounty or gratuity.

No feature of the Constitution is more marked than its vigilance for the protection of the public funds and the public credit against misuse. This is exemplified by numerous provisions in the instrument. In general, where the inhibitions of these provisions are found with respect to municipal corporations in terms, they are laid in language so broad as to include all classes of public or political corporations and therefore equally apply to counties.

For illustration, Section 50 of Article 3 denies to the Legislature any power to give or lend, or to authorize the giving or lending, of the credit of the State in aid of or to any person, association "or corporation, whether municipal or other," or to pledge the credit of the State in any manner whatsoever for the payment of the liabilities, present or prospective, of any individual, association of individuals, "municipal or other corporation whatsoever."

Section 52 of the same article prohibits the Legislature from authorizing "any county, city, town or other political corporation or subdivision of the State" to lend its credit or to grant public money or thing of value in aid of or to any individual, association or corporation whatsoever, etc., except for the certain public improvements to which the proviso of the section relates and as in that part of the section provided.

Section 53 of the same article restrains the Legislature from authorizing "any county or municipal authority" to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into and performed in whole or in part; and from paying or authorizing the payment of any claims created against "any county or municipality" of the State, under any agreement or contract made without authority of law.

Section 55 of the same article declares that the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to the State, or to "any county or other municipal corporation" in the State.

Section 3 of Article 11 denies to any "county, city or other municipal corporation" the power to become subscribers to the capital of any private corporation or association, or to make any appropriation or donation thereto, or in anywise loan its credit—excepting obligations undertaken pursuant to law prior to the Constitution's adoption.

Section 51 of Article 3—except for aiding, as stipulated in its proviso, indigent and disabled Confederate soldiers and sailors; indigent and disabled soldiers who served under special laws of the State in organizations for the protection of the frontier during the war between the States, or in the State militia during that war; their widows; and for the establishment of a home for such soldiers and sailors, their wives and widows and women who aided in the Confederacy—prohibits the Legislature from making any grant or authorizing the making of any grant of public money to any individual, association of individuals, "municipal or other corporation whatsoever."

This section recognizes only soldiers and sailors of the Confederacy, their wives and widows, and women who aided in the Confederacy, as having any claim upon the bounty of the State. Its evident purpose is to deny to the Legislature any power to grant or to authorize the grant of public money to all others, absolutely.

The giving away of public money, its application to other than strictly governmental purposes, is what the provision is intended to guard against. The prohibition is a positive and absolute one except as to a distinctive class to whom the State is under a sacred obligation. Not only are individuals, associations of individuals and private corporations within its spirit, but all kinds of public or political corporations, as well, whether strictly municipal or not. It therefore applies to counties, whether considered as public corporations or only *quasi* corporations. The similar restraints upon the use of public funds and the public credit applied to counties by these other provisions of the Constitution practically demonstrate this to be true.

If, therefore, the effect of the statute is to bestow funds of the State upon counties of the State as a gratuity, or for uses not related to the State's governmental duties, it would be invalid. On the other hand, if its effect is to but apply such funds to the uses of the State as a government, there can be no reason for holding it void.

It is accordingly important to consider the nature of counties under our form of government, their relationship to the State, their functions and their uses, in order to ascertain whether the powers they exercise in a governmental capacity are other than State powers, and whether their use of such State funds as are constituted by these excess fees for the purposes to which they may legally apply them, is any other than a use for the State as a government, for which purpose the counties are only availed of as a means.

The State government must be carried on by means of certain agencies or instrumentalities. It cannot be all conducted by purely State officials located at the capital. To bring the government close to the people and to maintain barriers against the centralization of power, we therefore have county government, a species of precinct government, and municipal government. They all reflect the Anglo-Saxon instinct for local self-government, and exist to preserve that sturdy and wholesome principle.

The municipal government is a government of distinct kind. Its origin and history very plainly reveal this. The term comes from the Roman law, under which the common division of civic communities established by the Roman government was three—the prefectures, the colonies and the *municipia*—the free towns, having and retaining their laws, their liberties and their magistrates. Their importance as unique features of the Roman Empire led an eminent historian to observe that ''the history of the conquest of the world by Rome is the history of the conquest and foundation of a vast number of cities. In the Roman world in Europe there was an almost exclusive preponderance of cities and an absence of country populations and dwellings,''—a condition, it may be added, which had much to do with its decay. The conception of the municipal towns was, ''a community of which the citizens were members of the whole nation, all possessing the same rights and subject to the same burdens, but retaining the administration of law and government in all local matters which concerned not the nation at large.''

This, in substance, is a correct description of municipal organizations in this country. With us, municipalities are in an important sense agencies of the State, and in them repose a certain part of the political power of the State, but their purpose, chiefly, it is important to remember, is to regulate and administer the local and internal affairs of the particular community. Their main and essential purpose, in a word, is the advantage which will ensue from them

to their inhabitants.  As Judge Dillon has put it, "the primary and fundamental idea of a municipal corporation is an institution to regulate and administer the internal concerns of the inhabitants of a defined locality in matters peculiar to the place incorporated, or at all events *not common to the State or people at large*." The affairs of a municipality are municipal affairs, their concerns are municipal— those merely of the community, and the powers they exercise are municipal powers.

This is not true of counties.  They are essentially instrumentalities of the State.  They are the means whereby the powers of the State are exerted through a form and agency of local government for the performance of those obligations which the State owes the people at large.  They are created by the sovereign will without any special regard to the will of those who reside within their limits. Their chief purpose is to make effective the civil administration of the State government.  The policy which they execute is the general policy of the State.  Through them the powers of government operate upon the people and are controlled by the people.  They are made use of by the State for the collection of taxes, for the diffusion of education, for the construction and maintenance of public highways, and for the care of the poor.  All of these things are matters of State, as distinguished from municipal, concern.  They intimately affect all the people.  The counties are availed of as efficient and convenient means for the discharge of the State's duty in their regard to all the people.

A principal State function which they perform, in whose performance they exercise essentially State powers, is the administration of the State's justice.  Their local courts exist for no other purpose.  Their local constabulary is to keep the State's peace.  They represent the State's' power in the different duties with which they are charged, and in the execution of those duties they exercise the State's power for the common welfare.

They possess some corporate attributes, but they are, at best, only *quasi* corporations.  1 Dillon, Section 37;  Heigel v. Wichita County, 84 Texas, 392, 31 Am. St., 63, 19 S. W., 562.  Primarily, they are political subdivisions—agencies for purely governmental administration.  They are endowed with corporate character only to better enable them to perform their public duties as auxiliaries of the State.

In Commissioners of Hamilton County v. Mighels, 7 Ohio State, 109, a leading case upon the subject, the nature of the relation of counties to the State is thus stated:

"A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and

civil administration, in matters of finance, of education, of provision
for the poor, of military organization, of the means of travel and
transport, and especially for the general administration of justice.
With scarcely an exception, all the powers and functions of the
county organization have a direct and exclusive reference to the
general policy of the State, and are, in fact, but a branch of the
general administration of that policy.''

In City of Sherman v. Shobe, 94 Texas, 127, 86 Am. St., 825, 58
S. W., 949, their character is thus described:

''Counties are commonly designated *quasi* corporations for the
reason that, being but political subdivisions of the State and organ-
ized purely for the purposes of government, they differ essentially
not only from private corporations but also from such public
corporations as towns and cities, which are voluntary and are es-
tablished largely for the private interests of their inhabitants.''

While a municipal corporation proper is liable for any injury re-
sulting from neglect to keep its streets in repair (City of Galveston
v. Posnainsky, 62 Texas, 118, 50 Am. Rep., 519), a county is not
liable for an injury caused by a defective public structure, such as a
bridge. Heigel v. Wichita County, 84 Texas, 392. This distinction
in respect to such liability rests upon the difference between the
character of a municipal corporation and that of a county—the differ-
ence in their relationship to the State.

In Judge Stayton's discussion in City of Galveston v. Posnainsky,
this difference is pointed out with the force and clearness character-
istic of his opinions. It is there emphasized that counties are but
''an agency of the state through which it can most conveniently and
effectively discharge the *duties* which the *State, as an organized govern-
ment,* assumes to *every person,* and by which it can best promote the
welfare of *all;''* and that the State makes use of them ''to exercise
powers not strictly municipal, but in fact, *State* powers, exercised
for the *State* through the local officers within prescribed territorial
limits.''

Since the duties which the counties perform are State duties and
the powers they exercise are State powers, an apportionment to them
of State funds, as the payment into their treasuries of the excess
fees of District Attorneys under this statute, for the carrying out
of those duties, is manifestly not a grant of public money. There
is nothing of the bestowal of a bounty or gratuity about it. It is
but a method adopted by the State for the discharge of an obligation
of the State—the obligation to provide the people with the facilities
of civil government through the counties as effective agencies for the
purpose. The counties receiving such excess fees can appropriate
them to none other than strictly governmental purposes, from which,
presumably, the State as a sovereignty, derives the benefit.

Those counties to whose uses the excess fees may be applied, may

derive a certain advantage over those to which none are paid, and over others in the proportion of such payments. But the statute is not to be held invalid for such lack of uniformity in the distribution of the excess, even if the defendant in error were in position to raise that question in this suit. It would doubtless be found that the counties receiving the larger amounts of the excess fees, furnish through the taxation of their inhabitants a like proportion of the fund from which the fees are originally paid. The payment of the excess into the treasury of the county where the excess occurs, is probably as fair a method for its distribution as the Legislature could devise.

The Court of Civil Appeals in our opinion correctly held that the change made in Article 3881 by the Amendment of 1913 did not, in view of other distinct provisions of the statute, relieve District Attorneys from the operation of the law fixing the maximum of their compensation.

The judgments of the Court of Civil Appeals and the District Court are reversed and the cause remanded to the District Court.

*Reversed and remanded.*