## JEFFERSON COUNTY, TEXAS, v. BOARD OF COUNTY AND DISTRICT ROAD INDEBTEDNESS.

No. A-165. Decided October 18, 1944.
Rehearing overruled November 8, 1944.
(182 S. W., 2d Series, 908.)

*Shelby Long,* County Attorney of Jefferson County, *Vinson, Elkins, Weems & Francis* and *Victor W. Bouldin,* all of Houston, for relator.

*Grover Sellers,* Attorney General, *C. F. Gibson* and *Geo. W. Barcus,* Assistants Attorney General, for respondent.

Mr. Chief Justice Alexander delivered the opinion of the Court.

This is an original mandamus proceeding, brought in this Court by Jefferson County against the Board of County and District Road Indebtedness, to compel said Board to approve the Dryden Ferry Bridge bonds previously issued by Jefferson County as eligible to participate in the "County and Road District Highway Fund" as provided for by statute.

In 1923 the State took over all highways constituting a part of the State highway system, and obligated itself to bear the expense incident to the maintenance and construction of all highways that were then or might in the future be designated as State highways. Acts 1923, 38th Leg., Ch. 75, p. 155, sec. 20. Similar provisions were enacted in 1925. (Vernon's Ann. Civ. Stats., Arts. 6674-a to 6674-n), Acts 1925, 39th Leg., Ch. 186, p. 456. State Highway No. 87, hereinafter dealt with, became a part of the State highway system in 1926.

In 1932 the Legislature enacted a statute known as the "Road Bond Assumption Act," by which the State further declared its intention to take over all highways then constituting any part of the State highway system, and by which the Legislature set aside certain funds for the discharge of subsequently maturing installments on bond obligations incurred by counties and road districts in constructing roads that had been taken over by the State. The Act provided, in substance, that one-fourth of the funds collected under the gasoline tax should be placed to the credit of the "County and Road District Highway Fund," to be used by the Board of County and District Road Indebtedness in payment ratably of all subsequent maturing installments of bonds issued by county and road districts prior to September, 1932, for funds actually used in the construction of roads that had been taken over by the State. It was recognized that the funds then available were not sufficient to meet the currently maturing installments on these outstanding obligations. Hence it was provided that the counties and road districts should continue to supply the balance of the funds necessary to meet these obligations. The "Road Bond Assumption Act" of 1932 was amended by Acts 1939, 46th Leg., Ch. 3, p. 582; Acts 1941, 47th Leg., 1st C. S., p. 2; and Acts 1943, 48th Leg., p. 494. The 1939 Act broadened the field of the "Road Bond Assumption Act" so as to render eligible for participation in the "County and Road District Highway Fund" all bonds issued prior to January 2, 1939, for funds used in the construction of roads which were then a part of the system of State

highways. At that time it was recognized that the funds available would be more than sufficient to discharge currently maturing installments on all eligible bonds, and it was then provided that a certain portion of the excess of the fund over the amount necessary to discharge currently maturing obligations should be credited to an account known as the "Lateral Road Account." Provision for the use of this Lateral Road Account was made as follows:

"As soon as practicable after the passage of this Act and before the Lateral Road Account is allocated to the counties, the Board shall determine the amount each county and each defined road district has paid since January 1, 1933, under the provisions of Chaptaer 13, Acts of the Third Called Session of the Forty-second Legislature, as amended (the Road Bond Assumption Act of 1932), toward its debt service upon bonds which at the time of payment were eligible to participate in the County and Road District Highway Fund, and shall deduct from the amount paid by such county or defined road district any and all advancements made by the Board to such county or defined road district in adjusting, refunding or prepaying the eligible obligations of such county or defined road district, and after making such deductions; the Board shall credit the Lateral Road Account of each county or defined road district with the net balance contributed by such county or road district toward the retirement of said eligible obligations and said funds so credited to any county or defined road district may be used or expended by the counties and defined road districts for the purposes authorize in this section.

\* \* \* \* \* \* \*

"The monies allocated to each county from the Lateral Road account shall be used by said county first for paying the principal, interest and sinking fund requirements maturing during the fiscal year for which such money was allocated to such county on bonds, warrants and other legal obligations issued prior to January 2, 1939, the proceeds of which were actually expended in acquiring rights of way for State designated highways, it being the intention of the Legislature to designate and set apart sufficient money to pay off and discharge said outstanding obligations incurred for right of way acquisition. Funds remaining in the Lateral Road Fund of any county after the payment of said right of way obligations may be used by the county, under the direction of the Commissioners Court, for any one or all of the following purposes: (a) for the acquisition of rights of way for county lateral roads and for the payment of legal obligations incurred therefor prior to January 2, 1939,

(b) for the construction or improvement of county lateral roads, (c) for paying the principal, interest and sinking fund requirements of any bonds or warrants which were legally issued by such county or Road District prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvement of lateral county roads, (d) for the purpose of supplementing funds appropriated by the United States Government for Works Progress Administration highway construction, Public Works Administration highway construction, and such other grants of Federal funds as may be made available to the counties of this State for county lateral road construction, and (e) for the purpose of cooperating with the State Highway Department and the Federal Government in the construction of farm-to-market roads." The Act of 1941 and 1943 contain similar provisions.

■ In 1934 the Legislature authorized the Highway Commission of the State to construct a bridge, herein referred to as the Dryden Ferry Bridge, on State Highway No. 87, across the Neches River between Jefferson and Orange Counties. As a part of the same Act, the Legislature authorized Jefferson County to issue bonds in the sum of $750,000.00. The proceeds of these bonds were to be turned over to the State Highway Commission, to be used by it, along with other funds to be furnished by the State Highway Commission and certain Federal agencies, in the construction of the bridge above referred to. The bonds were issued, and the proceeds thereof, to the extent of $701,745.67, were used in the construction of the bridge as contemplated by the Act.

The Board of County and District Road Indebtedness has declined Jefferson County's request to approve the above-described bonds as eligible to participate in the County and Road District Highway Fund. The parties agree that the sole question to be determined is whether the bonds in question, to the extent that the proceeds thereof were used in constructing said bridge, can be or are eligible for payment under the "Road Bond Assumption Act."

The first question to be determined is whether, under the circumstances, the appropriation of these funds for the purposes provided for in these Acts violate the provisions of our Constitution.

It is contended that the Bond Assumption Acts violate the provisions of Article III, Sections 44, 50, and 51 of our State Constitution. Section 44 reads as follows:

"Sec. 44. The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

In our opinion this section of the Constitution has no application to the situation here involved. The first part of the section prohibits only the granting of extra compensation to officers, agents, servants, and contractors who have served the State. The second portion prohibits the granting of public funds to an "individual" on a claim not previously provided for by law. No such facts are here involved.

■ Section 50, Article III, of the Constitution reads as follows:

"Sec. 50. The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever."

While the various Acts here involved are called "Road Bond Assumption Acts," this is a misnomer. Neither of the Acts in question evidences any attempt on the part of the Legislature to give, lend, or pledge the *credit of the State* for the payment of any liability of the county. Section 8 of the Act of 1939 specifically denies any such intention. This section reads as follows:

"Sec. 8. No provision of this Act shall be construed to authorize the giving or lending of the credit of the State to any county or district or to pledge the credit of the State in any manner whatever for the payment of any of the outstanding road indebtedness herein referred to of the counties or districts of the State. It is hereby declared that all eligible indebtedness, as herein defined, shall remain indebtedness of the respective counties or defined road districts which issued it, and said counties or defined road districts shall remain liable on said indebtedness according to its terms and tenor; and it is not the purpose

or intention of this Act, or any part hereof, to obligate the State of Texas directly or indirectly or contingently, for the payment of any such obligations or that the State of Texas should assume the payment of said obligations, and this Act is not to be construed as obligating the State of Texas to the holders of any of said obligations to make any payment of the same, or any part thereof, nor shall such holders have any rights to enforce the appropriation of any of the monies hereinabove provided for, nor shall any provision hereof constitute a contract on the part of the State to make money available to any county for the construction of additional lateral roads, but the provisions hereof are intended solely to compensate, repay and reimburse said counties and districts for the aid and assistance they have given to the State in furnishing, advancing and contributing money for building and constructing State Highway and lateral roads, to provide for the use and application by said counties and districts of the monies which they may receive under the provisions of this Act, and under the circumstances prescribed in this Act to provide additional money to counties for the construction of additional lateral roads."

Each of the other so-called Road Bond Assumption Acts contains similar provisions. In our opinion these Acts do not violate the above-quoted section of the Constitution.

Section 51, Article III, of the Constitution reads in part as follows:

"Sec. 51. The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; * * *."

This section of the Constitution forbids the granting of public moneys to any "municipal or other corporations whatsoever." Under the decisions of this State this provision prohibits the granting of public moneys to counties. Bexar County v. Linden, 110 Texas 339, 220 S. W. 761. However, it does not prohibit every appropriation of State funds for use by counties. It merely prohibits the bestowing of gratuities on counties. Counties are agencies of the State through which the State performs a part of its governmental functions. Consequently an apportionment of State funds to counties to be used by them in carrying out a part of the duties or governmental functions which properly rest on the State is not a gratuity within the meaning of the above constitutional inhibition. Bexar County v. Linden, supra; City of Aransas Pass v. Keeling, 112 Texas 339, 247 S. W. 818. The construction of public roads is a governmental function properly

belonging to the State. Robbins v. Limestone County, 114 Texas 345, 268 S. W. 916. Consequently public funds may be apportioned by the Legislature to counties for the purpose of constructing public roads or for other governmental purposes. In going so the State is merely using the county as its agent to use its funds for the purpose of performing its functions. Bexar County v. Linden, supra; City of Aransas Pass v. Keeling, supra; Road District No. 4, Shelby County, v. Allred, 123 Texas 77, 68 S. W. (2d) 164.

■ In order to understand the effect of the Acts of the Legislature here involved me must understand the facts which confronted the Legislature at the time these Acts were adopted. Prior to 1924 the titles to all highways in this State were taken in the names of the various counties in which the roads were situated. Such titles were held by the counties for the use and benefit of the State. Nevertheless the counties were charged by law with the duty of constructing and maintaining the roads. In the construction of these roads the counties and road districts were authorized to, and did, incur heavy bonded obligations. This method was adopted by the State for the purpose of enabling it to use the counties as its agents to construct public roads for the use and benefit of the State. Aransas County v. Coleman-Fulton Pasture Company, 108 Texas 216, 191 S. W. 553. In 1923 the Legislature adopted an Act by which the State took over from the counties all highways constituting a part of the State highway system. This part of the Act became effective January 1, 1924. Acts 1923, 38th Leg., Ch. 75, p. 155, sec. 20. Since that time, by various other Acts, the Legislature has taken other additional highways. The right of the State to take over roads constructed by counties was contested in the case of Robbins v. Limestone County, 114 Texas 345, 268 S. W. 915. This Court in sustaining the right of the State to take over such roads said:

"Public roads are State property over which the State has full control and authority.

\* \* \* \* \* \*

"The establishment of public highways being primarily a function of government belonging to the State, the right to establish them resides primarily in the Legislature, and in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the State, or to such other agency or instrumentality, general or local in its scope, as it may determine. The exercise of this right by a political subdivision of the State, or by local officers,

is founded upon statutory authority therefor. The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate.

\*    \*    \*    \*    \*    \*

"Their taking (the taking of county roads by the State) or the change of supervision over them is not the taking of the property of the County or Road District within the meaning of the State or Federal Constitutions, which prohibits the taking of property without just compensation or under due course of law. Such funds were derived by taxation or otherwise under authority of 'the laws of the State' for that purpose, and were not private funds belonging to the County or Road District in a proprietary sense, but the roads were created and are being maintained through the exercise of governmental functions and powers and for the benefit of the general public, both in and out of Limestone County and Special Road District No. 15. Houston v. Gonzales Independent School District, 229 S. W. 468, and cases cited."

The above authority shows a clear recognition of the fact that the roads were constructed by the counties as mere agents of the State, and that the funds raised by the counties through the sale of bonds for the construction thereof were not the private funds belonging to the county or road district in a proprietary sense. It would seem to follow necessarily that the obligations incurred by counties in the construction of these roads were not incurred by them strictly in their proprietary capacity, but to a certain extent as agents of the State. In 1932 the Legislature, in recognition of the fact that the counties and road districts had been used as agents of the State in constructing these roads, and that in doing so the counties and road districts had incurred obligations for the use and benefit of the State at large, and that it would be inequitable for the State to take over these roads without relieving the counties and road districts of the obligation to pay the debts so incurred for the use and benefit of the State, adopted the first Road Bond Assumption Act. (Vernon's Ann. Civ. Stats., Arts. 6674q-1 to 6674q-13), Acts 1932, 42nd Leg., 3d C. S., p. 15. Section 1 of that Act recited that the State recognized its obligation in the respect above indicated. By further provisions thereof the State undertook to set up a plan by which counties would be relieved from the burden of these outstanding obligations.

■ It will be noted that the funds provided for in the Road Bond Assumption Acts are to be used (1) to discharge currently maturing installments on eligible bonds, and (2) the excess is to be paid into the Lateral Road Account, and this fund is to be allocated ratably among the counties that have paid currently maturing installments on eligible bonds since the effective date (January 1, 1933) of the first Bond Assumption Act.

The first class of these payments—that is, payments to discharge currently maturing installments on eligible bonds—are not to be paid to the counties, but are to be paid directly by the Board of County and District Road Indebtedness to the holders of the outstanding obligations. These obligations were incurred by the counties as agencies of the State in the discharge of a governmental function properly resting on the State. They were incurred by the political subdivision for the benefit of the State as a whole and not for purely local purposes. In making these payments for the counties and road districts, the State merely discharges obligations incurred for its benefit. In our opinion the State has the right to relieve the counties and road districts of obligations which they incurred for the use and benefit of the State at large. This is not a grant of public funds to the county.

■ The second class of payments—that is, those made to the Lateral Road Account—are to be ultimately distributed among the various counties in the proportion that such counties have paid toward their debt service upon bonds which, at the time of payment, were eligible to participate in the County and Road District Highway Fund; but these funds are not granted to such counties for unrestricted use by them. Such funds can be used only for the purpose of constructing public roads, which is a governmental function properly belonging to the State. As previously stated, this Court in Robbins v. Limestone County, supra, held that the establishment of public highways was primarily a function of the government belonging to the State, and in the absence of constitutional restrictions the Legislature could exercise that right directly or delegate it to political subdivisions of the State, as it might determine. In the cases of City of Aransas Pass v. Keeling, 112 Texas 339, 247 S. W. 818, and Bexar County v. Linden, 110 Texas 339, 220 S. W. 761, it was held that the State could supply funds directly to a county or other political subdivision thereof for use in discharging a govermental function properly resting on the State without violating the provisions of Article III, Section 51, of our Constitution. Consequently we hold that the various bond assumption

Acts, in so far as they apportion State funds to counties for use in building public roads, do not violate the provisions of Article III, Section 51, of our Constitution.

■ The next question to be determined is: Did the Legislature by the enactment of the Bond Assumption Act of 1939, and by subsequent amendments thereto, intend to make the bond here involved eligible to participate in the County and Road District Highway Fund?

At the time these bonds were issued, only bonds voted or issued prior to 1932 were eligible to participate in said fund. Moreover, Section 5 of the Act of 1934, which authorized the issuance of these bonds, expressly provided that such bonds should not be paid off by the Board of County and District Road Indebtedness. Said Section 5 reads as follows:

"Sec. 5. No loan or grant which may be obtained under the provisions of this Act for the construction of such bridge and the approaches thereto shall be or become a debt against the State of Texas or against the State Highway Commission, but the said bonds which may be voted and issued by Jefferson County under the provisions of this Act shall constitute the debt and obligation solely of said Jefferson County. It is hereby declared to be the legislative intent that the bonds issued by Jefferson County as provided herein shall not be assumed by or paid off by the Board of County and Road District Bond Indebtedness, or out of any funds used by said Board to retire County and Road District Bonds." Acts 1934, 43d Leg., 4th C. S., Ch. 32, p. 78.

However, the Bond Assumption Acts of 1939, 1941, and 1943 broadened the field of eligible bonds so as to include all bonds issued prior to January 2, 1939. The Act of 1941 provided in part as follows:

"In addition to and regardless of the other provisions of this Act, *all bonds, warrants or other legal evidences of indebtedness voted. or issued without being voted by a county, road district or defined road district prior to January 2, 1939,* in so far as amounts of same were or may be issued and the proceeds actually expended in the construction of roads which are now a part of the designated System of State Highways or which have since, or which may hereafter become a part of the designated system of State Highways *shall be eligible to participate in the distribution of the moneys coming into said County and Road District Highway Fund the same as provided for other bonds*

*under this Act* and as of the date of the designation of said road as a part of the State Highway System." (Italics ours.) Acts 1941, 47th Leg., 1st C. S., Ch. 2, p. 6.

\* \* \* \* \*

"Sec. 2. This Act shall be cumulative of all other valid laws, but in the event of a conflict between any provision of this Act and any other Act, *either general* or *special,* the provisions of this Act shall prevail." (Italics ours.) Acts 1941, 47th Leg., 1st C. S., Ch. 2, p. 17. The Act of 1943 contains the same provisions.

The above-quoted provisions of the Acts of 1941 and 1943 in rather clear and positive language make *all bonds voted prior to January 2,1939,* for funds expended in constructing any road that was then a part of the designated System of State Highways eligible to participate in the fund in question. We think the Legislature thus evidenced an intention to abandon its former position as expressed in the 1934 Act above referred to, and to allow all bonds issued prior to January 2, 1939, to aparticipate in said fund. Necessarily this included these bonds which were voted in 1934 for funds used in constructing a bridge on State Highway No. 87. It will be noted that Section 2 of the Act of 1941 provided that the terms of that Act should prevail over conflicting provisions contained in any other law, whether such other law be a general or *special Act* of the Legislature. We think this effected a repeal of the conflicting provisions contained in the Act of 1934, even though that was a special Act. 59 C. J. 904.

In this connection we deem it proper, however, to call attention to the fact that while the Act of 1939 undertook to make all such bonds issued prior to January 2, 1939, eligible to participate in said fund, the repealing clause in that Act was not as broad as that contained in the Acts of 1941 and 1943. The repealing clause in the Act of 1939 read as follows:

"Sec. 13. This Act shall be cumulative of all other valid laws on the subject, but in the event of a conflict between any provision of this Act and any other Act, the provisions of this Act shall prevail." Acts 1939, 46th Leg., Ch. 3, p. 600.

We do not believe that this was sufficient to repeal the provisions contained in the Special Act of 1934 to the effect that the bonds therein provided for should not be eligible to participate in said fund. Ordinarily, a general repealing clause of inconsistent Acts does not, when contained in a general Act, operate to repeal a local or special Act, even though the provisions of

the two Acts are in some respects inconsistent. 59 C. J. 904. The intention to repeal special Acts embodying conflicting provisions must be clearly evidenced. 39 Tex. Jur. 149; Townsend v. Terrell, 118 Texas 463, 16 S. W. (2d) 1063; City of Laredo v. Martin, 52 Texas 548; Cole v. State of Texas, 106 Texas 472, 170 S. W. 1036. However, since the repealing clauses contained in the Acts of 1941 and 1943 were sufficient to make the provisions of those Acts control over the provisions of the prior special Act, the question as to whether the 1939 Act repealed the provisions of the prior special Act becomes relatively unimportant.

Notwithstanding the fact that the Legislature had stated in the Act of 1934 that Dryden Ferry Bridge Bonds should not be eligible to participate in the County and Road District Highway Fund, the Legislature at a subsequent session could, in the absence of any constitutional inhibition, alter the policy of the State in this respect and allow the bonds to participate in said fund, it being the general rule that one Legislature cannot bind the hands of a subsequent Legislature by the enactment of laws which may not be altered or repealed by a subsequent Legislature. 59 C. J. 900; Texas & N. O. Ry. Co. v. Miller, 128 S. W. 1165 (aff. 221 U. S. 408, 55 L. Ed. 789, 31 S. Ct. 534) ; Texas & N. O. Co. v. Gross, 128 S. W. 1173 (aff. 221 U. S. 417, 55 L. Ed. 796, 31 S. Ct. 536) ; Red River National Bank v. Ferguson, 109 Texas, 287 206 S. W. 923; Teafatiller v. Kaufman County (Civ. App.), 78 S. W. (2d) 1058; Sacramento & San Joaquin Drainage District v. Riley, 251 Pac. 207, 199 Calif. 668.

The bonds in question were issued by Jefferson County by authority of the State Legislature for the purpose of constructing a bridge on one of the State's highways. Under the Act of 1941, these bonds, to the amount of $701,745.67 actually used in the construction of said bridge, became eligible to participate in said fund. However, by the terms of the Act only those bonds which *at the time of their payment* were eligible to participate in said fund may now be taken into consideration in the apportionment of the funds in question. Consequently only such installments of the bonds here under consideration, which matured and were paid subsequent to the effective date of the 1941 Bond Assumption Act, are eligible for such purpose. The Board of County and District Road Indebtedness is ordered to so approve and recognize said bonds. The writ of mandamus will issue accordingly.

Opinion delivered October 18, 1944.

Rehearing overruled November 8, 1944.