

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

August 2, 1968

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas 78711

Opinion No. M-263

Re: Whether the Central Edu-
cation Agency may assign
a staff member, under the
proposed agreement with
the United States Office
of Education, and continue
to pay his State salary
and benefits under a
partially reimbursable
agreement during the period
of assignment to duties in
Washington, D.C., and re-
lated question.

Dear Dr. Edgar:

You have requested the opinion of this office upon certain questions, the first of which is as follows:

"1. May Central Education Agency assign a staff member, under the agreement proposal by the U. S. Office of Education, and continue to pay him State salary and benefits (partially reimbursable) during the time of such assignment to duties at Washington, D. C.?"

In connection with the foregoing question you have stated that pursuant to a proposed agreement between the Central Education Agency and the United States Office of Education a staff member of the Central Education Agency would be assigned to the Washington, D. C. office of the United States Office of Education as an Education Fellow. This staff member would spend a period of ten months as an assistant on the staff of the United States Commissioner of Education and following such assignment would return to the Central Education Agency. You have stated that the purpose of the Fellowship program is to provide your employee with the opportunity to gain an understanding of the Federal-State-local educational relationships and become knowledgeable about the role of the United States Office of Education therein.

Tha annual current State salary of the staff member

- 1272 -

being considered for assignment is $9,840.00. Under the proposed agreement between the United States Office of Education and the Central Education Agency, the staff member would be retained on the payroll of the Central Education Agency during the period of his assignment. However, under the proposed arrangement, the United States Office of Education would reimburse the Central Education Agency at the annual rate of $9,657.00. The question has arisen as to whether this staff member may be paid by State warrant for the period of time covered by the proposed agreement because such staff member would not be performing the duties for which he was employed by the State.

A review of the proposed agreement between the Central Education Agency and the United States Office of Education reveals that such agreement actually is a grant from the United States Office of Education to the Central Education Agency to enable a staff member of the Central Education Agency to obtain certain training and experience beneficial to the Central Education Agency in its cooperative activities with the United States Office of Education as the State is being reimbursed the salary of the employee during the training period.

Section 5 of Article 2654-3b, Vernon's Civil Statutes, provides that:

"The State Board of Education shall be responsible for maintaining State programs and activities designed to bring about improvement in the public schools. In discharging this responsibility, the Board is authorized to enter into contracts for grants from both public and private organizations and to expend such funds for the specific purposes and in accordance with the terms of the contract with the contracting agency." (Emphasis added.)

Senate Bill 15, Acts of the 60th Legislature, Regular Session, 1967, the General Appropriations Bill, provides in the departmental appropriation to the Central Education Agency that:

"The proper officer or officers of the Central Education Agency are hereby authorized to make application for and accept any other gifts, grants or allotments from the United States Government or other sources to be used on cooperative and other projects and programs in Texas. Any such Federal and other funds

as may be deposited in the State Treasury are hereby appropriated to the specific purposes authorized by the Federal Government and other contracting organizations, and the State Board of Education is authorized to expend these funds in accordance with the terms of the contract with the contracting agency.
. . ." (Emphasis added.)

The answer to the question which you have initially posed is governed by the application of Section 51 of Article III of the Texas Constitution, which is set forth, in part, as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . ."

While it is apparent that the foregoing constitutional provision prohibits the Legislature from granting or appropriating public moneys to any individual, association of individuals, municipal or other corporations, the Texas courts have interpreted Section 51 of Article III of the Constitution of Texas as not preventing the Legislature from appropriating State funds to an individual, association of individuals, municipal or other corporations if the use and purpose of the appropriation is for the furtherance of the governmental duties of the State. If the appropriation is for a use not related to State governmental duties and functions, such appropriation is a gratuity and invalid. Bexar County v. Linden, 110 Tex. 339, 220 S.W. 760 (1920); Road District No. 4, Shelby Co. v. Allred, 68 S.W.2d 164 (Comm.App. 1934), opinion adopted by the Supreme Court; City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818 (1923); Jones v. Alexander, 59 S.W.2d 1083 (Comm.App. 1933), opinion adopted by the Supreme Court; Texas Pharmaceutical Association v. Dooley, 90 S.W.2d 328 (Tex.Civ.App. 1936); Jefferson Co. v. Board of Co. and Dist. Road Indebtedness, 182 S.W.2d 908 (1944).

The authorization for the expenditure of appropriated funds for State employees to attend schools, clinics, conferences and other activities for training purposes is directly and substantially related to the performance of the State's governmental functions and duties. The limitation imposed by the provisions of Section 51 of Article III of the Constitution of Texas, is that no State employees or officials may attend schools, clinics, conferences or other like activities, at State expense, when such activities bear no substantial and direct relation to the governmental duties and functions of the State.

In reviewing past Attorney General's Opinions on the question of training of governmental personnel, it is noted that the following rules have been consistently applied to determine whether the training was such that the State could pay for it. The question asked is whether the training described will be directly and substantially used to facilitate the governmental duties and functions of the State agency requesting such training. Also, whether the facts establish that there is a reasonable, substantial and direct relationship between the purpose of the training and the accomplishment of the governmental functions entrusted to the employee. Attorney General's Opinion WW-83 (1957) - Insurance Commission employee training at IBM school, two weeks course; Attorney General's Opinion WW-223 (1957) - Department of Public Safety employee pilot training in Flight Proficiency Training Program; Attorney General's Opinion R-2128 (1950) - Department of Public Safety employee training in Police Administration at Northwestern University, four and one-half months course; Attorney General's Opinion WW-433 (1958).

In applying the above rules to the fact situation that you have presented, it is our opinion that the training provided your staff member, under the proposed agreement with the United States Office of Education, will be directly and substantially used to facilitate the administration of the governmental duties of the Central Education Agency. As the Central Education Agency must of necessity work closely with the United States Office of Education, it would appear to be most advantageous to have employees of your agency familiar with the operations of this Federal agency, as well as the programs which are administered by them which would be beneficial to the Central Education Agency. Cooperating and dealing with the United States Office of Education in programs and activities designed to bring about improvement in the public schools of this State is an authorized governmental function and duty of the Central Education Agency. The training in question bears a reasonable, substantial and direct relationship to such governmental duties and functions.

Consequently, we are of the opinion that the Central Education Agency has the authority to enter into an agreement, such as the proposed agreement, with the United States Office of Education, and that the employee of the Central Education Agency assigned to the United States Office of Education at Washington, D. C., for training, may continue to be paid his salary as a State employee.

The next question which you have posed is as follows:

"2.  Does Central Education Agency have
the authority to pay registration, tuition fees,
travel, per diem and other necessary expenses
(reimbursable from Title V funds) to staff-
salaried employees who are selected, authorized
and directed by the Commissioner of Education to
attend certain institutes, seminars, workshops
or other like training programs (sponsored by
recognized training facilities or institutions
of higher learning) and designed to improve
their professional and/or technical knowledge
toward the performance of their State job?"

In connection with the foregoing question you have
stated that:

"A second separate problem concerns one of
the plans involving the Central Education Agency
under Title V, Section 503, P.L. 89-10, the Ele-
mentary and Secondary Education Act of 1965.  This
State plan and application for Federal funds was
developed pursuant to that Act to provide for pay-
ment of registration, tuition, fees, travel, perdiem
and other necessary expenses for selected staff
members who have been authorized and/or directed
by me as Commissioner of Education to attend in-
stitutes, seminars, workshops, or other training
courses sponsored by institutions of higher learn-
ing or other recognized training institutions to
improve their professional and technical knowledge,
and thereby be the better prepared and informed
to perform their Agency jobs.   . . .

"Staff members are selected to participate
in training courses that are compatible with their
field of specialization and all training programs
must stand to serve the best interests of the
Central Education Agency and contribute to the
improvement of public education in the State of
Texas.  Most of the training courses involved are
sponsored by institutions outside the State and
are of varying duration.  Some involve as little
as two or three days; whereas others may be as
much as three or four months in length."

In connection with the foregoing question and facts,
you are concerned with whether the salary and travel expenses
of these employees selected to attend institutes, seminars,

workshops or other training courses may be paid. In this connection, you have referred to Sections 7, 9, 13, 14, 18 and 25 of Article V of Senate Bill 15, Acts of the 60th Legislature, Regular Session, 1967, as well as Article 5165a, Vernon's Civil Statutes, and Article 6813b, Vernon's Civil Statutes.

The aforesaid provisions deal with such subjects as employee vacation and leaves, absences from the State, general travel provisions, transportation allowances, restrictions on registration fees, the appropriation of Federal funds received by State agencies to the agencies receiving the same for the purposes for which the Federal grant or aid was made, weekly working hours of State employees and salaries of State employees.

A review of the plan and application of the Central Education Agency to obtain Federal funds under Section 503 of Title V, P.L. 89-10, the Elementary and Secondary Education Act of 1965, reveals that such application for Federal funds has as its purpose the strengthening of State Departments of Education by staff development. Such result is to be accomplished by employees of the Central Education Agency attending institutes, seminars, workshops or other training courses to improve their professional and technical knowledge and thereby be better prepared and informed to perform their duties with the Central Education Agency.

In view of the foregoing, we are of the opinion that the proposed activities of the Central Education Agency in having certain employees attend training courses is a valid exercise and function of the duties conferred upon the Central Education Agency by the Legislature, and upon the same basis and reasoning set forth in our answer to your initial question.

In regard to the reimbursement of travel expenses and registration fees of your staff members attending institutes, seminars, workshops or other training courses in connection with the Federal plan you have submitted, we would like to call your attention to Attorney General's Opinion C-761 (1966) which held that:

> "In Attorney General's Opinion C-671 (1966), it was held that appraisers employed by the Veterans' Land Board may attend an appraisal school at Texas A&M University and have their registration fees paid by the State. In that opinion, it was stated Section 18 of Article V of the General Appropriation Act of the 59th Legislature, pertaining to expenditure of money

for dues or registration in joining or attending any type of organization, has no application so long as the State employee does not join the organization. Likewise, it was held in Attorney General's Opinion C-692 (1966), registration fees necessary to attend courses of instruction deemed necessary to the furtherance of govern-mental duties, imposed upon a State agency, may be paid by such State agency. . . ."

In Attorney General's Opinion C-551 (1965), it was held that:

"Federal 'trust' funds appropriated to the Health Department may be expended for transporta-tion, meals and lodging for personnel attending schools, clinics or conferences when leave from regular duties exceed thirty (30) calendar days in accordance with the agreement under which the funds are received; however, State derived funds appropriated to such department for personnel training may not be expended for this purpose other than in accordance with . . . the General Appropriations Act (1965)."

The foregoing opinions clearly set forth that payment of registration fees required to enable State employees to attend training courses necessary to the furtherance of their govern-mental duties is authorized by the Texas Education Agency, and that Federal "trust" funds appropriated to the Central Education Agency may be expended for transportation expenses of employees in accordance with the agreement under which the funds have been received by the Central Education Agency from the Federal Govern-ment.

## S U M M A R Y

The Central Education Agency may assign a staff member, under the proposed agreement between the Central Education Agency and the United States Office of Education, to duties at the United States Office of Education in Washington, D. C., for train-ing purposes, and such employee may continue to re-ceive and be paid his State salary.

The Central Education Agency has the authority to pay registration, tuition fees, travel, per diem and other necessary expenses of staff members who are selected and directed by the Commissioner of

Education to attend certain institutes, seminars, workshops and other like training programs designed to improve their professional and technical knowledge in the performance of their State job.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Pat Bailey
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
Alan Minter
Neil Williams
Edward Esquivel
Brock Jones, Jr.

A. J. CARUBBI, JR.
Executive Assistant