

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

September 20, 1973

The Honorable Clayton T. Garrison
Executive Director
Texas Parks & Wildlife Department
John H. Reagan Building
Austin, Texas 78701

Dear Mr. Garrison:

Opinion No. H- 109

Re: Authority of Parks and
Wildlife Department to
contract with utility or
water districts for ser-
vices to state park

You have requested an opinion as to whether the Parks and Wildlife Department (hereafter "the Department") may contract with a utility district and water authority for utility service to a state park if the contract requires the Department to make initial service connection payments to defray costs incurred in providing the service.

It is proposed that Pirates' Cove Municipal Utility District would furnish sewage treatment facilities to the park. The so-called service connection payment would include the cost of a portion of the proposed sewage treatment plant, materials for additional line construction, increased line size, and other, unspecified expenses involved in furnishing sewage treatment to the park for five years. The Department also proposes to provide half of the salary of an employee of the District over that period plus a monthly payment for actual sewage treatment. The alternative to this arrangement would require the Department to build its own sewage treatment plant on park property and incur the full expense and responsibility for its maintenance, at a considerably greater initial capital outlay. The difference in cost to the Department is less significant, however, over the entire period of five years.

It is proposed that the Galveston County Water Authority would furnish water. Evidently it would prefer to construct a transmission line not only to service the state park but also other customers. The Department would bear solely that portion of construction expense which represents the park's percentage of use. The alternative is for the Authority to provide a line only large enough to service the park. The cost to the Department would be the same.

p. 522

The District and Authority must extend their water and sewage lines over six miles of private property before reaching the park's boundary in order to furnish the above-described service.

Galveston Island State Park, with which this request is connected, was created in 1970 under the auspices of Article 6081r, V. T. C. S. (See also, H. C. R. No. 72, 62nd Leg., p. 4012, eff. 1971). Section 2 of the statute empowers the Department "to develop, operate, and maintain outdoor areas and facilities of the state and to acquire land, waters, and interests in land and waters for such areas and facilities."

Section 1 provides:

> "The Parks and Wildlife Department is hereby authorized and directed to cooperate with the proper departments of the Federal Government and with all other departments of the state and local governments including as part of a state plan water districts, river authorities, and special districts in outdoor recreation in the enforcement and administration of the provisions of the Federal Acts and any Amendments thereto . . . . It is the intent of the Legislature to add to the purposes, functions and duties of river authorities and water districts or other political subdivisions organized under Article III, Section 52, or Article XVI, Section 59, of the Constitution of Texas, and counties, to acquire lands for public recreation purposes, to construct thereon facilities for public use, to provide for the operation, maintenance and supervision of such public recreation areas, and to enter into agreements with other local, state or Federal Agencies for planning, construction, maintenance, and operation of such facilities, together with necessary access roads thereto, and to maintain adequate sanitary standards on the land and water areas as a part of and adjacent to such recreation areas."

Galveston County Water Authority and Pirates' Cove Municipal Utility District are organized under and pursuant to the provisions of § 59 of Article 16 as conservation and reclamation districts. Articles 8280-318 and 8280-339, V. T. C. S. As such, they are deemed to be "government agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law." Article 16 § 59(b), Texas Constitution.

Section 59(a) of Article 16 declares the enumerated functions of these districts to be "public rights and duties" which include "the control, storing, preservation and distribution of (the State's) storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes . . . ."

Clearly, then, the statutory mandate to establish and maintain such places as Galveston Island State Park through interagency cooperation is a broad one, and districts such as the municipal utility district and water authority involved here are constitutionally authorized to contract with the Department to furnish the public functions which the Department desires to utilize.

But any proposed contract between the Department and Pirates' Cove Municipal Utility District or the Galveston County Water Authority must still be scrutinized, in the context of Article 3 § 51 of the Texas Constitution, which states:

> "The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . . ."

The prohibition requires a "quid pro quo" for any agreement necessitating the expenditure of state funds. Byrd v. City of Dallas, 6 S. W. 2d 738 (Tex. 1928); Friedman v. American Surety Co. of New York, 151 S. W. 2d 570 (Tex. 1941); Barrington v. Cokinos, 338 S. W. 2d 133 (Tex. 1960). We are not

in a position to examine the financial desirability of the agreements in question, but, apparently, the Department conceives them to be the more desirable of the alternatives.

The Department proposes to pay only that percentage of the cost which represents the increased burden on the Authority and Utility District as a result of the services contracted for, whether for pipeline, plant construction, or manpower, plus the monthly fee for actual services provided. We see no reason to doubt that this would result in a mutually satisfactory exchange of consideration.

The Texas courts have consistently held that the stricture of Article 3 § 51 against gratuitous grants is satisfied when money is appropriated for a valid public purpose. Bullock v. Calvert, 480 S. W. 2d 367 (Tex. 1972); State v. City of Austin, 331 S. W. 2d 737 (Tex. 1960); Barrington v. Cokinos, 338 S. W. 2d 133 (Tex. 1960); Jefferson County v. Board of County and District Road Indebtedness, 182 S. W. 2d 908 (Tex. 1944); Road Dist. No. 4, Shelby County v. Allred, 68 S. W. 2d 164 (Tex. 1934).

The agreements in question would undoubtedly serve to accomplish the public purpose delineated by the Legislature in § 1 of Article 6081r, V. T. C. S., in creating a cooperative effort between the Department and local districts for the maintenance of an outdoor recreational facility. And, in so doing, the Water Authority and Municipal Utility District would be performing functions allocated to them by Article 16 § 59 of the Texas Constitution.

They become, in effect, agents of the State to provide services which it is the duty of the State to provide. Any incidental benefit which accrues to a corporate body does not render the State's expenditure invalid if the primary purpose of the appropriation is a public one. State v. City of Austin, supra; Barrington v. Cokinos, supra; Jefferson County v. Board of County and District Road Indebtedness, supra; City of Aransas Pass v. Keeling, 247 S. W. 818 (Tex. 1923).

Still, the problem of ownership and control remains. By the proposed arrangements, the State will expend funds for the construction of a plant and pipeline it will not own and for the employment of personnel it will not control.

Legislative appropriations of funds for employees have been upheld if the funds are deemed "wages" or compensation rather than gratuities, and a public purpose is being served. Direct control of these employees by the State does not appear to be constitutionally relevant. Friedman v. American Surety Company of New York, 151 S.W. 2d 570 (Tex. 1941); Byrd v. City of Dallas, 6 S.W. 2d 738 (Tex. 1928).

Attorney General Opinion No. C-511 (1965) dealt with a similar question involving a legislative authorization for a grant of funds by the Texas Aeronautics Commission to a city for the purpose of construction, repair or improvement of its airport. It was determined that the prohibitions of Article 3 § 51 would not apply if the city, rather than a private citizen, acquired ownership in the airstrip to be renovated, given the valid public purpose of the grant.

The proposed improvements of Galveston Island State Park would always be owned and controlled by the Water Authority and Utility District which are recipients of state funds not unlike the city in Opinion C-511. Thus, the public is continually being served.

Attorney General Opinion No. M-32 (1967) states that a grant of state funds to a municipality or interstate agency for the construction of waste collection, treatment and disposal facilities for water quality control purposes, through the Texas Water Quality Board, would not be in violation of Article 3 § 51. The above facilities would, no doubt, be owned and managed by the individual agency or municipality rather than the State and incidentally benefit the local area involved. The furtherance of a statewide recreational program through interagency cooperation via Article 6081r, V.T.C.S., is analogous.

Legislative control would be maintained over these districts. Their administrators are either appointed or elected, insuring that public rather than private interests will be served, in accordance with the thrust of Article 3 § 51. Texas Pharmaceutical Association v. Dooley, 90 S.W. 2d 328 (Tex. Civ. App., Austin, 1936, no writ); Articles 8280-318 and 8280-339, V.T.C.S.

The authorities we have cited deal with the constitutionality of outright grants rather than agreements based upon mutual consideration. Moreover, districts created under Article 16 § 59 have been deemed to be "political subdivisions" distinct from municipal corporations in that they perform "work denominated public rights and duties defined by the Constitution." Willacy County Water Control and Improvement District No. 1 v. Abendroth, 177 S.W.

2d 936 (Tex. 1944); Banker v. Jefferson County Water Control and Improvement District No. 1, 277 S.W. 2d 130 (Tex. Civ. App., Beaumont, 1955, ref'd, n. r. e.); Harris County Water Control and Improvement District No. 58 v. City of Houston, 357 S.W. 2d 789 (Tex. Civ. App., Houston, 1962, ref'd., n. r. e.).

It appears doubtful, therefore, that any incidental benefit derived by the districts in question, relating to services provided to facilities other than the state park, would be sufficient to place these agreements in violation of Article 3 § 51.

In view, then, of the mutual exchange of consideration involved, the clearly authorized public purpose of and benefit from the agreements, the sanction for local agencies to perform public duties, and the special, public nature of services rendered by districts created under Article 16 § 59, the Parks and Wildlife Department has the authority to enter into the contracts in question.

## SUMMARY

The Parks and Wildlife Department may contract with districts created under § 59 of Article 16 of the Constitution for the furnishing of water and sewage services and may pay a proportionate share of the cost of new facilities without violating § 51 of Article 3 of the Constitution.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee