## JOHN DALEY v. THE STATE.

### No. 1950.   Decided December 21, 1898.

**1.   Staking Horse on Inclosed Land—Construction of Statute.**

Penal Code, article 794, making it an offense to stake a horse upon the inclosed land of another without the owner's consent, was not intended only to protect cultivated lands, but includes pasture lands also.

**2.   Same.**

Article 794, Penal Code, does not require that the locus in quo, to come within the meaning of "inclosed land," should be inclosed with a lawful fence or be inclosed with a fence all round. A pasture on the gulf or on a stream, if it is fenced off on the other sides so as to hold cattle, is sufficient, notwithstanding cattle might get out by either swimming or fording the stream.

**3.   Same—As to Ownership of the Land.**

The words, "inclosed land of another," used in the statute, article 794, has reference to the possessory right, and not to the title to the land; and it is neither necessary to allege all the owners of the land in said inclosure, nor prove their want of consent.

**4.   Same.**

The statute makes no exception, and a party who stakes his horse in the inclosed lands of another is not exempt from liability because of his purpose to hunt.

APPEAL from the County Court of Jefferson. Tried below before Hon. ED. P. GRAY, County Judge.

Appeal from a conviction for staking a horse upon the inclosed land of another, without his consent; penalty, a fine of $25.

The case is sufficiently stated in the opinion.

*Matt Cramer*, for appellant, cited Cleveland v. State, 8 Texas Crim. App., 44; Jones v. State, 18 Texas Crim. App., 366.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of staking a horse on the inclosed land of another, and fined $25; hence this appeal.

Appellant contends that the statute under which this conviction was had was intended only to protect cultivated lands. Penal Code, art. 794. We can not agree to this contention; nor do we agree that, before a prosecution can be maintained under this statute, the injured party should have a lawful fence. In this connection it is insisted that the locus in quo was not inclosed, because it was not fenced all around. The proof here shows that there were some 75,000 acres in the pasture; that the gulf was the inclosure on one side, and certain bayous partly inclosed it on another; and there was proof tending to show that where the fence joined the gulf, when the tide was out, cattle had ingress and egress, and also that cattle could go across the bayous. There was also proof that there was a bridge over the bayou, which was kept open, there being no gate or bars to same, and that consequently the pasture could not be said to be inclosed. We do not believe this position a sound one, under the above statute. The locus in quo was for pasturage purpose simply, and it appears to have answered this purpose. The statute does not require the inclosure, as we understand it, to be fenced; and where one owns land on the gulf or on a stream, if it is fenced off on other sides, so as to hold cattle, this would be sufficient, notwithstanding it is possible for cattle to get out of the pasture either by swimming or fording the stream, as some proof tended to show could be done in this pasture. The evidence tending to show that this was done indicates that, when it was accomplished, it was with difficulty; that, when cattle were taken out of the pasture, they were made to swim the bayou; that where the bayou was fordable, it was extremely boggy, and the cattle kept in the pasture would not go across the bridge. We think that this pasture was inclosed to all intents and purposes. It served the purpose of an inclosed pasture, and kept the prosecutor's stock inside about as well as a pasture fenced all around would have done.

Appellant also insists that the proof showed that two other persons owned several sections of land in the pasture, and the State would have to allege that it was the pasture of all, and prove the want of consent of all. The statute says "the inclosed lands of another." We do not think it has reference to the title, but to the possessory right. It was the pasture of J. T. White, as alleged, and contained about 75,000 acres; and the fact that his son, E. F. White, may have owned a section or two of land in said pasture, and that Cade may have also owned the fee in two or three sections of said land, would make no difference. It was, none the less, the inclosure of J. T. White. If there were circumstances to authorize the consent of Cade or E. F. White, appellant should have

shown that he had such consent. It is true, as claimed by appellant, that, at the time he was found in the pasture by J. T. White, he did not go there for the purpose of grazing his horse, but went to hunt ducks; and the staking of the horse out to graze appears to have been a mere incident to his trespassing on the land of White. But we know of no exception under the statute, and we do not feel authorized to ingraft an exception on the statute, and hold that it is not operative against one who goes hunting in the inclosed lands of another, and, while engaged in such hunt, stakes his horse out to graze. The judgment is affirmed.

*Affirmed.*