

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 8, 1948

Hon. J. Y. Boyd
County Auditor
Lubbock County
Lubbock, Texas

Opinion No. V-716

Re: Authority of county to jointly
    erect with a city an itinerant
    Mexican labor camp building
    in Lubbock.

Dear Sir:

Your letter requesting an opinion states:

"The Chamber of Commerce of this city ap-
pointed a committee to call on the City and County
Commissioners for an appropriation of approximate-
ly $6,500.00 to build an itinerant Mexican labor camp
building in the City of Lubbock. The purpose of such
building would be a gathering place for Latin Ameri-
can laborers, such building to be equipped to care
for all sanitary conditions. Another purpose would
be to have these laborers in one place rather than
have them scattered over the city, creating a health
hazard, and that the farmers have only one place to
come to hire them to gather their cotton, feed and
other crops. It is proposed that the maintenance of
said building would be cared for out of the City-
County Welfare fund, an association created by the
City and County jointly for the purpose of relief to
the unemployed and needy people.

"The City Commission appropriated $3,250.00,
provided the County Commission would provide a
like amount out of County funds. Will you, therefore,
please advise me whether:

"1. The Commissioners' Court of Lubbock
County would have the authority to spend or appro-
priate county funds for the erection of such buildings,

or would have the authority to pay rent out of
county funds for a building of this nature.

"2. Would the Commissioners' Court of
Lubbock County have the authority to appropriate
county funds for such building under the terms of
Article 4434.

"3. If the Commissioners' Court should
pass an order appropriating $3,250.00 to match
the City of Lubbock out of any county funds, would
I as County Auditor have the authority to sign war-
rants in payment of the funds in case the Court
has no authority to appropriate such funds."

The Texas Constitution prohibits the spending of money
for the benefit of a particular class or individual except under cer-
tain circumstances not present here. Art. III, Sec. 52; Art. XVI,
Sec. 6; and related articles. These articles are applicable to coun-
ties. Bexar County v. Linden, 110 Tex. 339, 220 S.W. 761. In that
case, the Supreme Court wrote:

"Its evident purpose is to deny to the Leg-
islature any power to grant or to authorize the
grant of public money to all others (than veterans,
etc.) absolutely.

"The giving away of public money, its ap-
plication to other than strictly governmental pur-
poses, is what the provision is intended to guard
against. The prohibition is a positive and abso-
lute one except as to a distinctive class to whom
the State is under a sacred obligation."

Further, Section 6 of Article XVI provides that the Leg-
islature shall have no power to appropriate money to establish an
Immigration Bureau or for the purpose of bringing immigrants into
this State. Since the Legislature is without such power, it could not
authorize the counties to do what it is itself prohibited from doing.
And, of course, the Constitution prohibits expenditures not author-
ized by law. Art. III, Sec. 53.

Hen. J. Y. Boyd, Page 3 (V-716)

Under such provisions, the County generally would not be authorized to erect buildings for the use of any particular class of persons--whether they be railroad employees, itinerant Latin-American workers, or any other such group. Nor could it authorize the erection of private health and sanitary facilities solely for itinerant workers or any other group of that character. Thus the County Attorney of Nueces County was advised by the Attorney General on February 2, 1948, that Nueces County was not authorized to purchase and operate what had been a Federal Transient Labor Camp. A copy of that letter is enclosed.

On the other hand, the Legislature is not prohibited from authorizing counties from erecting such public buildings and improvements as are necessary for public health and sanitation. It undoubtedly has such power so long as such items constitute county business.

The Constitution provides that the county should act, in this general regard, through its Commissioners' Court "which shall exercise powers and jurisdiction over all county business, as is conferred by this Constitution and laws of the State . . ." Art. V, Sec. 18.

The general rule, as laid down by our courts, is that the counties have only such powers and duties as are prescribed by the Constitution and statutes. Lacking general powers, they may perform only such acts as are specifically enumerated. As stated by Justice Sharp in Childress County v. State (1936), 127 Tex. 343, 92 S.W.(2d) 1011:

"The authority of the Commissioners' Court of Childress County to make contracts in its behalf is strictly limited to that conferred, either expressly or by fair or necessary implication, by the Constitution and laws of this State."[1] 127 Tex. 352.

[1] Other cases with like holdings are: Mills County v. Lampasas County, 90 Tex. 603, 40 S.W. 403; Anderson v. Wood, 137 Tex. 201, 152 S.W.(2d) 1084; Hogg v. Campbell, 48 S.W. 515; Roper v. Hall (Civ.App.), 280 S.W. 289; Harris County v. Kaiser (Civ.App., writ ref'd,), 23 S.W.(2d) 840; G. H. & S. A. Ry. v. Uvalde County (Civ.App., writ ref'd, w.o.m.), 167 S.W.(2d) 305; Von Rosenberg v. Lovett (Civ. App., writ ref'd), 173 S.W. 508; 11 Tex.Jur. 563, Counties, § 36; ibid. p. 632, § 95; 20 C.J.S. 1006.

In Edwards County v. Jennings (Civ.App., 1895), 33 S.W. 585, the County contracted for Jennings to furnish a water supply for county buildings and for public watering troughs. The court upheld the County's power to contract for water for county purposes. But as to the public troughs and private piping rights which the court held were unauthorized, the court said:

". . . but to supply the general public with water . . . (is) a very different question . . . Counties, being component parts of the State, have no powers or duties except these clearly set forth in the Constitution and statutes."

The case was affirmed (89 Tex. 618, 35 S.W. 1053), but on other grounds. And the facts did not involve issues of public health. The case is therefore illustrative of the limited powers of counties, but is not controlling on issues of public health here involved.

The general powers and duties of the Commissioners' Court are set out in Article 2315, R.C.S. The only power approaching the facts herein is prescribed in Section 7:

"Provide and keep in repair court houses, jails, and all necessary public buildings."

This section was construed in Dancy v. Davidson (Civ. App., 1944, writ refused), 183 S.W.(2d) 195. It was there stated:

"By the term 'public building' . . . is meant a building used primarily for public or governmental purposes, that is, to house public or governmental agencies."

The court there held that a building to house various county agencies including a public health unit, agricultural agent, branch office of the County Assessor and Collector of Taxes, etc., would be authorized. But we do not understand that the Labor Camp in question would be a building of such calibre.

The sole statute from which the authority may be drawn to perform the acts in question is Article 4434, R.C.S., cited by you, which provides:

> "The municipal authorities of towns and
> cities, and commissioners courts of the coun-
> ties wherein such towns and cities are situated,
> may co-operate with each other in making such
> improvements connected with said towns, cities
> and counties as said authorities and courts may
> deem necessary to improve the publid health and
> to promote efficient sanitary regulations; and, by
> mutual arrangement, they may provide for the
> construction of said improvements and the pay-
> ment therefor."

The provisions of Article 4434 are broad. Yet they may not extend beyond the mentioned provisions of the Texas Constitution. Under the questions you submit, it is difficult to draw a rigid line between that which is private in character, as affects itinerant workers and their employers, and that which is public in character and intended for the health and sanitation of the public as a whole.

Construing the two together, it is our conclusion that the County and City would be authorized to cooperate and expend funds in the erection of public toilets and related sanitary facilities, sewerage and garbage disposal units, drinking fountains, and items of similar nature which could be used by itinerant workers and others of the general public. These measures would certainly tend to minimize the incidence or spread of any disease. They would tend toward a general cleanliness of the community and should bring about a resultant increase in the chances for general public health. In this regard, the statute gives local authorities broad discretion "to provide for the construction of said improvements and the payment therefor." Under such circumstances our Supreme Court has stated:

> "Where a right is conferred or obligation
> imposed on said (Commissioners') Court, it has
> implied authority to exercise a broad discretion
> to accomplish the purposes intended." Anderson
> v. Wood, 137 Tex. 201, 152 S.W.(2d) 1084.[2]

---

[2] To the same effect are Madison County v. Wallace, 118 Tex. 279, 15 S.W.(2d) 535; Dodson v. Marshall (Civ.App.) 118 S.W.(2d) 621, 623; and El Paso County v. Elam (Civ.App.), 106 S.W.(2d) 393.

Whether improvements which are to be constructed under Article 4434 are necessary to improve public health and to promote efficient sanitary regulations is largely a question of fact to be considered by the Commissioners' Court, and its judgment will not be overturned in the absence of an abuse of discretion. Dodson v. Marshall (Civ.App., writ dismissed), 118 S.W.(2d) 621, by Justice Alexander.

On the other hand, the erection of dormitories, meeting halls, recreation halls, garages, and similar buildings solely for itinerant workers or any other similar group does not come within the meaning of the "health and sanitary" facilities contemplated for the general public under Article 4434 and the constitutional provisions above referred to. A general "Labor Camp" as mentioned in your letter, for the benefit of any particular group of persons, would appear to fall within such prohibition.

## SUMMARY

A county may, in cooperation with a city under Article 4434, provide health and sanitary facilities for itinerant Latin American workers and others of the general public to promote the public health of the community. But it is not authorized to construct a general Labor Camp solely for such workers.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

Joe R. Greenhill
Executive Assistant

JRG:erc

APPROVED:

ATTORNEY GENERAL