

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

June 9, 1939

Hon. Coke R. Stevenson
Lieutenant Governor
Austin, Texas

Dear Sir:

Opinion No. 0-908
Re: Constitutionality of House
Bill No. 688.

By your letter of May 30, 1939, you have asked
the opinion of this Department upon the question as to
whether House Bill No. 699 is invalid as violating Article
8, Section 7, or Article 3, Section 51 of our Constitution.

Your statement of the substance of this Bill,
which we adopt, is as follows:

"Under the terms of House Bill 688 as now pend-
ing in the Senate it is proposed to use the exist-
ing surplus (built up in the administration of this
special fund under the terms of Chapter 13, Acts
3rd Called Session of the 42nd Legislature, as
amended) and the future excess income:

(1) To repay and reimburse the counties and
defined road districts for the amounts they paid
on maturing bonds which were eligible to parti-
cipate in the fund, which said amounts the State
failed to pay, during the years 1933-1937, inclu-
sive.

(2) To make eligible for participation in
the benefits of the Fund, bonds and warrants of
the counties and road districts outstanding on
roads which, since Sept. 17, 1932, the effective
date of the original act, have been designated
State Highways.

(3) To enlarge the scope of Chapter 13,
Acts of Third Called Session, 42nd Legislature,
to make said surplus and excess income:

"(a) Available to the counties and to the defined road districts for the payment of principal, interest, and sinking fund requirements on obligations of said counties and road districts issued for the construction of lateral roads, not a part of the system of designated State highways and jurisdiction over which is retained in the local county Commissioners' Courts.

"(b) Available to the counties for lateral road construction such amounts as under the terms of House Bill 688 are not needed for debt retirement purposes."

The provisions of the Constitution to which you refer read as follows:

"Article 3, Section 51. The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporation whatsoever, ..."

"Article 8, Section 7. The Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury; and shall make it penal for any person or persons to borrow, withhold, or in any manner to divert from its purpose any special fund, or any part thereof."

We will first consider:

1. The right of the State to retire indebtedness of counties and road districts incurred in the construction of: (a) Public roads made a part of the State highway system as designated by the Highway Commissioners. (b) Public roads not a part of such designated system, left under control of the counties.

2. The right of the State to reimburse counties and road districts for moneys already expended by them on public roads.

The provisions of Section 51 of Article 3 of the Constitution apply to counties as well as to other municipal corporations. Bexar County vs. Linden, 220 S. W. 761. In this Section, however, we find no such limitation as is found in Section 44 of Article 3 of the Constitution, relating to the payment of claims of individuals, that the claim must be founded upon a pre-existing legal obligation. So that, in our opinion, the State is inhabited by such Section only from the bestowal of gratuities upon its political subdivisions. Road District No. 4, Shelby County, vs. Allred, 123 Tex. 77, 68 S. W. (2d) 164. Reimbursement may be made by the State to its political subdivisions, therefore, of moneys expended by such political subdivisions for State, as distinguished from purely local or municipal, purposes. Such reimbursement, of course, must be on account of obligations incurred by the political subdivision for the benefit of the State as a whole. The undertaking for which the moneys were expended by such political subdivision must be one which the State itself might lawfully have undertaken for the benefit of its people as a whole, else the reimbursement would be the giving of a gratuity and stand condemned by the Constitution.

The distinction we draw here is one which was impliedly, if not expressly, recognized by our Supreme Court in the case of Road District, No. 4, Shelby County, vs. Allred, cited supra.

It is perhaps well to remark in passing that such restitution as the State is authorized to make to its political subdivisions must be made in such manner as not to violate other provisions of our Constitution, such as those forbidding the passing of local or special laws, and the assumption, by the State, of the debt, present or prospective, of its political subdivisions.

That the building of public roads is a function of government belonging primarily to the State is thoroughly established by the decisions and is recognized in the Constitution.

Article 11, Section 2, of the Constitution provides:

"The construction of jails, courthouses and bridges and the establishment of county poor-

houses and farms, and the laying out, construction
and repairing of county roads shall be provided for
by general laws."

Article 16, Section 24, of the Constitution pro-
vides as follows:

"The Legislature shall make provision for
laying out and working public roads, for the
building of bridges, and for utilizing fines,
forfeitures, and convict labor to all these
purposes."

In the case of Robbins vs. Limestone County,
268 S. W., at page 918, our Supreme Court, speaking through
Justice Pierson, said:

"The establishment of public highways being
primarily a function of government belonging to
the State, the right to establish them resides
primarily in the Legislature, and, in the absence
of Constitutional restrictions, the Legislature
may exercise that right or delegate it to a poli-
tical subdivision of the State..."

In the same case it is held that public roads
within the borders of a county belong not to the county,
but to the State.

And in Bexar County vs. Linden, 220 S. W., at
page 762, the Supreme Court, speaking through Phillips,
C. J., said:

"The giving away of public money, its applica-
tion is to other than strictly governmental purposes,
is what the provision (Art. 3, Sec. 51) guards against."

And on page 763:

"They (counties) are made use of by the State
for the collection of taxes, for the diffusion of
education, for the construction and maintenance of
public highways, and for the care of the poor.
All of these things are matters of State, as dis-
tinguished from municipal concern. They intimately

affect all the people. The counties are availed of
as efficient and convenient means for the discharge
of the State's duty in their regard to all the people."

The Legislature has determined that it is not fair
and equitable that counties and road districts should be re-
quired by taxation of their own citizens to bear the entire
cost of constructing and maintaining public roads for the
benefit of the State at large, but that this expense should
be borne by the State and paid from the proceeds of a tax
upon those of its citizens who use the highways and roads.
The retirement by the State of indebtedness of counties and
road districts incurred in the construction of public roads,
whether those roads are or are not made a part of the design-
ated State highway system, does not in our opinion violate
the provisions of Section 51 of Article 3 of our Constitution.

We are likewise of the opinion that the reimburse-
ment by the State of the counties and road districts for
moneys already expended by them on public roads does not
constitute a violation of the provisions of Section 51,
Article 3, of the Constitution, provided that the counties
and road districts are required to use the moneys thus
returned to them for the construction and maintenance of
public roads or for the retirement of outstanding indebted-
ness incurred in the construction or maintenance of public
roads., That portion of House Bill No. 688, subsection No.
4 of amended section 7, found on pages 19 and 20 of the Act,
which directs the making of cash payments to counties to
reimburse them for road tax moneys used to discharge obliga-
tions eligible for participation under the original Act
is of doubtful constitutionality because the use of the
payments thus made is not restricted by the Act. Thus,
though the reimbursement is intended to be made for moneys
expended by the counties in their capacity as agents of the
State for a State purpose, to-wit, the construction of
public roads, the repayment is to the county in its pro-
prietary capacity and might be devoted by the county to
purely local purposes, or, in any event, to purposes other
than those for which the tax moneys were originally collect-
ed by the counties under and by virtue of their constitu-
tional authority and within the constitutional limits
placed upon such counties.

In our opinion, since the taxes collected by the
counties and out of which the expenditures were made, were

assessed for a State purpose, the reimbursement must be made
in such manner that relief is afforded the counties in the
same capacity. We do not believe that the road and bridge
fund of the county, created by the Constitution, may be
made the vehicle through which funds available to the county
for other purposes, for which the authority of the county to
tax is limited by the Constitution, may be thus augmented.
Since the reimbursement constitutes a restitution of a fund
collected from its citizens for road and bridge purposes, to
hold that this fund might be devoted to other uses would be
to say, in effect, that counties may levy a tax for one
purpose and expend it for another. Our objection to this
section, however, may be obviated by requiring that the
moneys thus returned to the counties be used for road con-
struction and maintenance, or for the retirement of outstand-
ing obligations issued for such purpose.

Consideration of House Bill No. 688 likewise
involves the right of the State to make available to counties
and road districts certain surplus funds to accumulate under
House Bill 688, if enacted into law, for lateral road con-
struction.

The State may delegate to its political subdivi-
sions, as its agents, the discharge of such governmental
functions and duties primarily resting upon the State as
the construction and maintenance of public roads, and may
provide the funds to be used by such agents for such pur-
poses. Bexar County vs. Linden, 220 S. W. 761. It is
therefore apparent that the provisions of House Bill 688
making available to counties and road districts surplus
funds to accumulate under House Bill 688, if enacted into
law, for lateral road construction, does not violate the
provisions of Section 51, Article 3, of our Constitution.

The last consideration involved in the determina-
tion of the constitutionality of House Bill 688 concerns the
limitations on the right of the State to use the surplus
already accumulated under the administration of Chapter 13,
as amended.

The existing Act and its amendments provide for
the payment of one-fourth of the gasoline levy into the
county and road district highway fund. The Act levying the
tax likewise informs the taxpayer that so much of the levy

will be devoted to the purposes of retiring bonds eligible for participation in said fund. The existing Act and amendments provide the bonds which shall be thus eligible for participation.

The Act, as most recently amended, in 1937, states:

"All moneys deposited to the credit of the county and road district highway fund with the State Treasury up to September 1, 1939, are hereby appropriated to said respective counties and defined road districts and shall be received, held, used, and applied by the State Treasurer as ex officio treasurer of said respective counties and defined road districts to the payment of the interest, principal, and sinking fund requirement on all eligible obligations maturing on and from September 1, 1937, to and including August 31, 1939, and each year thereafter until all of such eligible obligations are fully paid..."

The original Act and prior amendments contained substantially similar provisions, with the exception that in the original Act and prior amendments, the dates coincide with the fiscal biennium there involved.

It is thus apparent that the surplus which has already been accumulated was collected from the people of this State upon the express assurance contained in the Acts levying the tax that the taxes thus assessed and collected would be devoted to specified purposes, namely, to the retirement of bonds eligible for participation in the fund at the time the tax was levied and collected. The taxpayer was assured, in effect, that the moneys thus collected from him would be devoted to such purpose "until all of such eligible obligations are fully paid."

Under our constitutional provision, and upon plainest principles of justice and fair dealing, such surplus became a special fund, analogous to a trust fund, and cannot be legally applied to any other purpose than the complete and final discharge of the purpose for which it was collected. When the obligations which the fund was collected to pay shall have been completely and finally discharged, that is, when "all of such eligible obligations are fully paid," any surplus then remaining may, in our

opinion, be appropriated by the Legislature to other purposes. There is no implication that such funds in that event should be returned to or held subject to the will of those paying the taxes, and it is not thought that the Constitution intended to prohibit the use of a surplus remaining in a special fund after the purpose for which the fund was created had been completely and finally discharged. Auditor General vs. State Treasurer (Mich.) 7 N.W. 716.

You are therefore advised that so much of House Bill No. 688 as attempts, prior to the full payment of all obligations already eligible for participation, to devote the surplus already accumulated in the county and road district highway fund to the payment of obligations made eligible for such participation for the first time by such Bill, and to other purposes, is unconstitutional, as constituting a diversion of a special fund.

Yours very truly

ATTORNEY GENERAL OF TEXAS

(signed)
R. W. Fairchild

By

R. W. Fairchild
Assistant

RWF:PBP

APPROVED:
(signed)
Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
opinion
committee
By MCH
chairman