# Supreme Court of Texas

---

No. 25-0127

---

Laboratory Corporation of America Holdings, d/b/a Laboratory Corporation of America,

*Petitioner*,

v.

The State of Texas and NPT Associates,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the First District of Texas

---

CHIEF JUSTICE BLACKLOCK, joined by Justice Busby, dissenting.

The "materiality" rule the Court announces is not supplied by the statutory text, which imposes a textual materiality requirement in two nearby provisions but conspicuously not in the provision at issue. The source of the Court's materiality rule is, instead, the common law of fraud, which the Court mistakenly assumes the Legislature must have thought just as applicable to LabCorp's relationship with the State of Texas as it is to LabCorp's relationship with a private health insurance company.

Without a strong warrant in the statutory text, the Court imports familiar principles of common-law fraud into a regulatory context unfamiliar to the common law—a massive, elaborate government healthcare program chronically vulnerable to fraud. The Court confronts a statute protecting the State and the taxpayers from misuse of the public treasury and treats it as though it were a statute protecting private parties from each other. This category error would be no error at all if the statutory text supported it. Courts can certainly hold the Texas Health and Human Services Commission to the same common-law, "reasonable-man" standards as private parties (estoppel, apparent authority, reasonable reliance, inquiry notice, etc.) if the Legislature asks us to do so. The Legislature has not asked us to do so, at least not in this instance.

The common law developed to govern and guide the private economy, not to govern and guide the sovereign. Obviously, common-law thinking is deeply embedded in our legal culture, and it often retains much influence in the realm of public law, as it should. But the question here is not whether it is *permissible* to look to the common law for guidance on the application of a Medicaid statute. Of course it is. The question is whether the common law's influence over a Medicaid statute is so strong as to *compel* the judiciary to add to an unambiguous statute a "material" word the Legislature conspicuously omitted. The answer is no.

The Texas Health and Human Services Commission is many things, perhaps far too many things. Whatever else it may be, it is certainly not LabCorp's commercial counterparty. It is a representative

2

of the sovereign people of Texas and a custodian of their money, which has been entrusted to it under rules it is not at liberty to waive, ignore, or forget. When the people running a business fail to protect the business's interests, whether knowingly or by inattention, they often bind their successors and the business in the future. The same is rarely true of the State, which is frequently not held to common-law standards of objective reasonableness.[1] One reason for this difference is that the people sitting across the HHSC conference table from LabCorp's executives do not have the power to speak for, or to bind, the State of

---

[1] *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant."); *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990) ("If agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the [Appropriations] Clause reposes in Congress in effect could be transferred to the Executive."); *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917) ("[The sovereign] is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit."); *City of White Settlement v. Super Wash Inc.*, 198 S.W.3d 770, 773 (Tex. 2006) ("'[E]quitable estoppel will not lie against the Government as [it lies] against private litigants' . . . . [because] legislative prerogative would be undermined if a government agent could—through mistake, neglect, or an intentional act—effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation." (quoting *Richmond*, 496 U.S. at 419)).

3

Texas in anything resembling the way LabCorp's executives speak for and bind LabCorp.

We need not consult any background law to interpret the straightforward statute before us. But if we did, the law governing disputes with the sovereign over the public treasury (e.g., immunity, no estoppel against the State, etc.) ought to be just as informative as the law governing private disputes between equals. The statute at issue does not govern a relationship between equals. It governs the relationship between the State of Texas and those who seek to profit by voluntarily participating in a multi-billion-dollar taxpayer-funded welfare program. HHSC employees do not have the power to authorize LabCorp to overcharge the State of Texas. Their inattention to LabCorp's alleged failure to comply with Texas law's best-price requirement cannot excuse a departure from the rules LabCorp agreed to when it signed up as a Medicaid contractor. In short, this is not the kind of relationship to which the heavy common-law presumptions on which the Court relies are a comfortable fit.

* * *

Although the background principles the Court invokes should carry less weight in this context than the Court affords them, we need not have consulted any background principles at all. The text indicates on its own that the liability it creates hinges purely on subjective

4

causation, not on the objectively material[2] omission the Court requires. The text says:

> A person commits an unlawful act if the person . . . knowingly conceals or fails to disclose information that permits a person to receive [an improper payment].

TEX. HUM. RES. CODE § 36.002(2).

"Permits" is the pivotal word for today's purposes. A curious word choice, perhaps, but hardly opaque as these things go. The statute's rule is this: If a person's omission permits an improper payment, the person is liable. The Court's rule is this: If a person's material omission permits an improper payment, the person is liable. The Court's rule thus gives Medicaid-fraud defendants an additional off-ramp the Legislature did not give them. It is no longer the case that an omission gives rise to liability if, as a factual matter, it allows or brings about an improper payment, which is all I take "permits" to mean. Under the Court's decision, even if an omission allows or brings about an improper

---

[2] "The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable [decisionmaker]." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976). The Court's definition of materiality, borrowed from the statute, reflects an objective standard that turns on the natural tendency of the omitted information to influence a reasonable decisionmaker, not on the actual decisionmaker's reasons for the decision. *See Ante* at 28 ("The Act defines '[m]aterial' as 'having a natural tendency to influence or to be capable of influencing,' TEX. HUM. RES. CODE § 36.001(5-a), and we have previously explained that '[a] representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision.'" (quoting *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019)).

payment, there is no liability unless the omission was also objectively material. The defendant can win *either* by showing that the omission did not actually, subjectively cause the payment *or* by showing that the omission did not, objectively, have a tendency to influence a reasonable Medicaid administrator's decision about the payment. Although the Court's analysis of the facts blends these two inquiries, they are distinct questions. As the experience of securities fraud litigation demonstrates, they may be litigated in future cases as two separate defenses, either of which is sufficient to get the defendant off the hook.[3]

The Court gets to this place by assuming that common-law background principles require us essentially to insert "material" between "disclose" and "information" in section 36.002(2). Put aside the familiar dissenter's refrain about not adding words to statutes. I have no objection, in principle, to reading statutes in light of the background law, sometimes even in ways that might be thought by critics to add a word or two. I disagree with the Court's over-reliance on background law that does not fully capture the nature of the relationship between LabCorp and the State of Texas, but I will beat that horse no further. As a textual matter, the problem is not just that the Court adds a word. The problem is the weighty word the Court adds—material. Not only

---

[3] *See* 3 THOMAS LEE HAZEN, TREATISE ON THE LAW OF SECURITIES REGULATION § 12.64 (8th ed. upd. 2026) ("[E]ven if a private plaintiff can establish materiality, the plaintiff also carries the burden[] of proving causation . . . ."); *see, e.g.*, *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 275 (3d Cir. 2005) ("[L]oss causation and materiality are two separate elements of a [securities fraud] claim."); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (listing materiality and loss causation as separate elements).

does this jurisprudentially loaded word create a free-standing, matter-of-law defense not contemplated by the text. Not only does reading it into the statute threaten to sweep in mountains of federal caselaw constructed to protect fraud defendants from the misuse of statutes that actually use the word "material." Setting that aside, the Court reads the word "material" into section 36.002(2) even though several neighboring provisions, including the companion provision governing misstatements, actually use the word. *See, e.g.*, TEX. HUM. RES. CODE §§ 36.002(1) ("a false statement or misrepresentation of a material fact to permit [an improper payment]"), .002(4)(B) ("a false statement or misrepresentation of material fact concerning . . . information"), .002(12) ("making or use of a false record or statement material to an obligation to pay").

By requiring a "misrepresentation of *material* fact" in the provision governing false statements but requiring only a "fail[ure] to disclose information" in the nearby companion provision governing omissions, the Legislature could hardly have made it clearer that materiality is not a distinct requirement for omissions. I suppose the drafters needed to insert a clunky aside, like ". . . fail to disclose information, whether or not material, that permits . . . ." As ugly and superfluous as that would look, it seems the only way around the Court's strong presumption.

In the Court's view, the word "material" need not be added to the provision because the word "permits" already entails it. *Ante* at 24, 27. One problem for this view is that the neighboring provision governing misstatements uses both the verb "permit[s]" and the adjective

7

"material." TEX. HUM. RES. CODE § 36.002(1). If the Court is right that "permits" entails materiality, then the word "material" is superfluous in the misstatements provision. In any event, the Court is not right that "permits" entails materiality. The Court notes that "[i]nherent in the concept that *A* 'permits' *B* is the suggestion that *A* must carry some importance—or else it would not 'allow' *B* or create an 'opportunity' for *B* to occur." *Ante* at 25. I agree. But importance can be objective or subjective. A statement or omission can be objectively important in the sense that a reasonable person would appreciate its significance, even if that significance is lost on the actual decisionmaker. Conversely, the actual decisionmaker may subjectively attribute significance to a statement or omission that, objectively, it does not carry. The statement or omission is still important *to the decisionmaker* and therefore may be what, as a factual matter, "permits" the decision. The Court does not grapple much with the distinction between the subjective causation inquiry and the objective materiality inquiry, but for me it is the whole ballgame.

The Court's textual error is compounded by its heavy reliance on the statutory definition of the word "material." *See* TEX. HUM. RES. CODE § 36.001(5-a) ("'Material' means having a natural tendency to influence or to be capable of influencing."). The statute uses "material" several times, although not in the disputed provision, and then it provides a statutory definition of that term, which should communicate to the judiciary, "This is what we mean when we use *this* word." The Court finds itself in the curious position of responding, "Yes, and it is also what you mean when you *don't* use that word." It is one thing (sometimes the

8

right thing, though rarely, depending on the context) to read a word into a statute. It is quite another to incorporate the legislative definition of a word into statutory text that does not contain the word.

In my view, the word "permits" imposes a simple subjective causation requirement, which is not at all without teeth and which in many cases would overlap with an objective materiality requirement, as it does in the Court's application of its materiality rule to these facts. *Ante* at 29–36. But the text does not remotely suggest an additional, objective inquiry—on top of simple causation—into whether the omission had a tendency to influence the decision of a reasonable Medicaid administrator. The Court concludes otherwise. Thus now, even if it is true that the omission was a but-for cause of the payment, it must also be true that the omitted information objectively had a tendency to influence a reasonable Medicaid administrator. That is not a crazy rule by any means, but it is not what the text says.

The Court invokes the U.S. Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016). I agree with *Escobar*, which analyzes a federal statute imposing liability on one who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." *See* 31 U.S.C. § 3729(a)(1)(A). The Supreme Court, quite reasonably, interpreted the statutory words "false or fraudulent claim" to include a materiality requirement because the ordinary meaning of those words, in particular the word "fraudulent," comes to us from the common law and historically entails materiality.

*Escobar* correctly holds that when Congress uses common-law words like "fraud" and "fraudulent," the courts should not divorce those words from their common-law roots. I agree completely. That is not what we have here. "Permits" is not a common-law word. The word "fraud" or its derivatives are nowhere to be found in the provision at issue. Surely the Legislature's use of "fraud" in the non-operative title of the statute (the "Medicaid Fraud Prevention Act") cannot bear the weight the Court places on it. The title of a legislative act may sometimes serve as a weak indicator of meaning when the operative text is unclear, as is not the case here. But let us not be naïve. Particularly on a high-profile topic like Medicaid fraud, a legislative act's ceremonial title is usually selected for its value as a promotional political slogan, not for its accuracy in capturing the nuances of the statutory text.

If the Texas Legislature had prohibited "fraudulent omissions," this case would be like *Escobar*, and I would agree with the Court about materiality. The Legislature did not say that. It imposed liability on one who "fails to disclose information that permits a person to receive [an improper payment]." TEX. HUM. RES. CODE § 36.002(2). This provision contains no common-law terms in need of judicial elaboration. I take it to mean what it says, no more and no less.

For these reasons, I find the textual argument for the Court's reading of the statute quite weak. Only with the strong support of a heavy presumption in favor of incorporating the common-law's approach to materiality does the Court's approach become plausible. Because I do not think the presumption the Court invokes is nearly strong enough to

10

turn a remarkably poor textual argument into a winner, I cannot join the Court's understanding of the disputed text.

\* \* \*

This is no mere academic debate about the weight of presumptions and the nuance of syntax. To illustrate the practical consequence of the Court's materiality rule, we can divide potential omissions into three groups. First, consider omissions that did not make a difference in the payment decision. If the omission does not subjectively allow or bring about the payment, then we cannot say the omission "permits" the payment. I believe the Court and I agree on that.[4] Second, consider omissions that would tend to influence the decision of an objectively reasonable Medicaid administrator (i.e., material omissions). If such an omission subjectively brings about the payment, then the omission "permits" the improper payment. I agree with the Court on that.

The problem is a third category, one the Court must assume will be rare or non-existent but which strikes me as plausible, perhaps even common, in the messy realm of government healthcare payments. If a person omits information that would make no difference to a hypothetical, *reasonable* Medicaid administrator in light of everything else that has been disclosed, but divulging the omitted information would, in fact, have caused the *actual* Medicaid administrator to reject

---

[4] As does the State, I think. While the State's briefing resists taking a firm position on the causal connection required between the omission and the payment, at oral argument the State conceded, as surely it must, that the omission must be at least a but-for cause of the payment in order for us to say that the omission "permits" the payment.

the payment, did the omission "permit" the payment? I think so. If the payment was illegal, and if revealing the omitted information would have stopped it, then the omission "permits" an illegal payment. This is no less true if the omission would not have been important in the mind of a hypothetical, objectively reasonable Medicaid administrator who has earnestly stayed abreast of everything the contractor has divulged about the payment.

In an ideal world, the Court's materiality rule would make little difference. If the people on both sides of the conference table are sophisticated, attentive, and vigorously protecting their side's prerogatives, then the difference between what subjectively causes a payment to be made and what objectively would cause a reasonable person to make the payment should be negligible. There may be a much wider gap than the Court assumes, however, between the behavior of hypothetical, reasonable Medicaid administrators and the behavior of actual, real-world Medicaid administrators—and that gap may be outcome determinative in future cases because of today's decision.

The Legislature knows we do not live in an ideal world of objectively reasonable Medicaid administration. To be fair, the program is so large and so elaborate—and the world is so full of both sick people seeking help and ambitious people seeking profit—that perhaps it would be impossible for anyone running the program to consistently satisfy the standards of objective reasonableness the law demands of private companies. Be that as it may, a reasonable legislator might very well assume that LabCorp's executives—paid handsomely to make as much money as possible from Texas's Medicaid program and supported by

12

armies of lawyers and consultants—operate at a higher level of sophistication and attentiveness than the HHSC employees across the table. In light of that dynamic, does the Legislature want a company in LabCorp's position to think, "Let's tell them just enough about this payment that they should realize it's illegal if they're paying attention, but if they don't notice, we'll get paid; if they notice later, we'll convince a court the omission wasn't material given everything else we told them"? Or does the Legislature want the company to think, "If we don't tell them everything about the legality of this payment that might matter to even the most inattentive and unsophisticated bureaucrat, we may end up on the hook for a big penalty, even if the bureaucrat should have caught it"? The reader can decide.

Although it is not our job to assess the wisdom of dispensing with a materiality requirement for omissions but not for misstatements, it is not hard to see why the Legislature may have wanted to do so. A broad liability rule for omissions incentivizes maximum divulgence of potentially relevant information. It puts the onus on the contractor to police its own compliance and to overcommunicate about any potential problems with its charges, rather than putting the onus on the Medicaid administrators to ask questions or put the pieces together for themselves. By the same token, in a regime where contractors are expected to volunteer as much information as possible about the legality of their charges, a materiality requirement for misstatements diminishes the threat of liability for immaterial errors in the information provided. In this way, the two apparently divergent liability rules may actually work together to encourage maximum

information flow. If you tell us everything, you have a matter-of-law defense if we rely on your statements in unreasonable ways. If you don't tell us everything, you're on the hook if our ignorance means you receive an illegal payment, even if we should have known better.

Who knows if that was the intentional design of this statute. Courts are often bad at guessing at such things. I hypothesize it only to illustrate that imposing liability for omissions that cause illegal payments, irrespective of materiality, would not be crazy or even surprising in the context of a government program that is far too large and far too elaborate for any government bureaucracy, no matter how well intentioned, to proactively police. That the Legislature might want the risk of bureaucratic inattention or incompetence to fall on those who seek to profit from the public treasury rather than on the taxpayers should be no surprise in Texas, where almost no feature of our law "is more marked than its vigilance for the protection of the public funds and the public credit against misuse." *Bexar County v. Linden*, 220 S.W. 761, 761 (Tex. 1920).

* * *

With all that said, I do not disagree in spirit with the Court's dim view of the weak case the State has thus far made against LabCorp. Even without a materiality requirement, this statute is not a license for the State or a qui tam plaintiff to harass a company that helpfully laid all its cards on the table to help the State make a lawful payment decision, as LabCorp claims to have done. Several defenses, apart from an extra-textual materiality defense, are available in circumstances like these. For instance, on these facts it is not clear there were any

14

omissions at all, much less material ones. It is not clear any omissions were a but-for cause of the payments. And perhaps most importantly, it is not even clear the payments were illegal.

I do not pass judgment on any of those points, but each of them remained to be explored, and each of them may have entitled LabCorp to judgment. LabCorp, however, has not sought judgment on any of those theories. Its summary judgment motion, which the district court granted, argued only that the statute imposes a materiality requirement and that none of the alleged misstatements or omissions were material. That motion should have been denied, with respect to omissions, because the sole legal theory it advances is incorrect as to omissions. Whether additional grounds for judgment in LabCorp's favor may exist for reasons resembling those the Court gives today is not the question before us. LabCorp's materiality argument is the only ticket to reversal on offer. Because I disagree with that argument, I respectfully dissent.

James D. Blacklock
Chief Justice

**OPINION FILED:** June 19, 2026

15